**STATE of Missouri, Appellant,**

v.

**Daniel Anthony BASILE, Respondent.**

No. 77123.

Supreme Court of Missouri,
En Banc.

March 25, 1997.

Rehearing Denied April 29, 1997.

---

12. Op. at 321.

13. *Smulls*, 935 S.W.2d at 28–29 (Limbaugh, J., concurring in part and dissenting in part).

14. *Id.* at 27.

15. *Id.* at 28, 30.

ter, Basile filed a motion for post-conviction relief pursuant to Rule 29.15. Relief was denied after a full evidentiary hearing. Basile appeals both judgments. This Court has exclusive appellate jurisdiction over the consolidated appeals. Mo. Const. art. V, § 3. The judgments are affirmed.

## I.

The evidence is viewed in a light most favorable to the verdict. *State v. Six,* 805 S.W.2d 159, 162 (Mo. banc), *cert. denied,* 502 U.S. 871, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991).

The events leading up to the murder began on January 10, 1992, when James Torregrossa went to get a tire for his ex-girlfriend at the Old Orchard service station in Webster Groves. Richard DeCaro worked at the station. Torregrossa and DeCaro knew each other because they both belonged to Gold's Gym. DeCaro told Torregrossa that he had heavy payments on his van and asked Torregrossa if he knew of anyone that could "take it off his hands." In the same conversation, DeCaro asked if Torregrossa knew anyone who could "put a hit on somebody" for him. DeCaro also stated that his wife thought he was having an affair with his secretary and that he would not wish marriage on anyone.

Ten days later, DeCaro purchased a $100,-000 life insurance policy on behalf of his wife, Elizabeth, listing himself as the primary beneficiary. On January 26, 1992, Richard DeCaro struck Elizabeth with their van, knocking her through the garage wall into the kitchen. She sustained severe bruising. The insurance company paid Richard DeCaro over $30,000 as a result of this incident.

In January of 1992, DeCaro asked Craig Wells, a manager at Old Orchard service station, if he knew anyone who could steal his van. Wells introduced DeCaro to Basile. The two met, and DeCaro offered Basile $15,000 to steal the van and kill Elizabeth. On February 8, 1992, Basile stole the van, drove it to Jackson, Missouri, and burned it. He received $200 for this job.

On February 28, 1992, Basile asked his friend, Jeffrey Niehaus, for a stolen gun that

Craig A. Johnston, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Breck K. Burgess, Assistant Attorney General, Jefferson City, for Respondent.

HOLSTEIN, Chief Justice.

Daniel Anthony Basile was convicted of the first degree murder of Elizabeth Ann DeCaro. Basile was sentenced to death. Thereaf-

was not traceable. On March 4, Basile showed his half-brother, Doug Meyer, a .22 caliber semi-automatic pistol with pearl-like grips. He claimed that he bought the gun from his father for $100. On March 5, Basile asked another friend, Susan Jenkins, to get him some latex gloves from the doctors offices in which she worked. On March 6, Basile told Meyer that he could not work that day because he was working for Richard DeCaro.

On March 6, 1992, Richard DeCaro picked up two of his four children from school and then went home to pick up the other two. He drove all four of the children and the family dog to the Lake of the Ozarks, leaving St. Louis a little after noon. They checked into the Holiday Inn at the lake at 2:59 p.m. Two of the children testified that they saw their mother alive before they went to school that morning. They testified that the dog would always bark at strangers.

Between 2:00 and 2:30 p.m., a witness noted that the DeCaro garage door was closed. Elizabeth DeCaro left work at 2:20 p.m.. At 3:15 p.m., a neighbor stopped by and noticed the garage door was open and that the De-Caros' Blazer with personalized license plates reading "RIK–LIZ" was in the garage, but no one answered the doorbell.

At 4:15 p.m., Basile was seen driving the DeCaro's Blazer in St. Charles. That evening around 6:30 to 7:00 p.m., Basile called an ex-roommate for a ride, stating "Things went down. I did what I had to do." At 7:00 p.m., Basile called Doug Meyer and asked if Meyer had garage space where Basile could work on his car. Basile drove the Blazer to Richard Borak's home in Florissant and gave him a "boom box" stereo stolen from the DeCaro residence as a birthday gift. Basile told Borak that he "did this lady." Just after 8:00 p.m., the Blazer was spotted heading south on Interstate 270. At 10:30 p.m., Basile went to Meyer's house, where they ate pizza before going out for drinks.

Elizabeth DeCaro had planned to meet her sister, Melanie Enkleman, for dinner at 5:00 p.m. When the victim failed to show up for dinner or answer her telephone, Enkleman and a mutual friend went to the DeCaro home. They went in through an open side door in the garage and then through an open door leading into the house. They found Elizabeth DeCaro lying face-down on the kitchen floor. Enkleman called 911 at around 8:00 p.m.

Elizabeth DeCaro had two gunshot wounds in the back of her neck and bruises on her body. When she was shot, the gun was in contact with her body, and she was either kneeling or lying down. The bullets recovered from her body were .22 caliber. Police found no signs of forced entry. Audio-visual equipment had been removed from the home, but the cables and wires had been carefully unplugged or unscrewed from the walls.

On March 7, 1992, after reading about the DeCaro death in the paper, Basile called Craig Wells and stated, "It looks like I've gotten set up." On March 9, Meyer found the DeCaro's dismantled Blazer in the garage that he had provided for Basile. Meyer helped Basile take parts of the Blazer to the dump. Meyer realized that the Blazer belonged to DeCaro and confronted Basile. Basile admitted to Meyer that he stole the Blazer. At trial, Meyer testified that Basile told him "it was either him or her, and he wasn't going back to jail." Basile told Meyer that he was a thief, not a murderer. On March 11, Meyer contacted the police.

On March 12, 1992, Basile went to Kenneth Robinson's trailer and told Robinson that he was in trouble because the police thought that he had "done the van and the lady." Robinson contacted the police. The police arrested Basile a few hours later.

In the investigation, police found a license plate from the stolen and burned van in Cape Girardeau County. They also found the van itself. The dismantled remains of the DeCaro's Blazer was found in an apartment garage near Fenton, Missouri. Also in the garage was a portable stereo unit. Police later recovered the DeCaro's stolen "boom box" from Ricky Borak's apartment.

Basile did not testify on his own behalf during trial. He presented the testimony of four witnesses. The jury found Basile guilty of first degree murder. Basile also did not testify in the penalty phase. According to a stipulation, he had prior convictions for bur-

glary, stealing and assault. There was testimony that Basile had strangled his neighbor on one occasion and threatened to kill an ex-girlfriend's husband. Elizabeth DeCaro's mother and sister testified about the victim's life and how her loss impacted the family.

In assessing punishment, the jury cited two statutory aggravating circumstances: (1) that Basile murdered Elizabeth DeCaro for another for the purpose of receiving money or other things of value, and (2) that Basile murdered DeCaro as an agent or employee of Richard DeCaro. *§ 565.032(4) and (6), RSMo 1986.*

### II.

Basile first argues that a series of statements made by the prosecuting attorney was improper. While no objection was made to some of the statements, he argues that the statements warranted sua sponte relief by the trial court under the plain error doctrine or, in the alternative, that counsel was ineffective in failing to object.

### A. Guilt Phase Argument

#### 1.

Prosecuting attorney Braun stated the following during closing argument of the guilt phase:

> Mr. Basile is in the basement, most likely in this room, locked in.
>
> About 11:40, you heard from Melanie, Jenny McKay comes by and drops off Courtney [one of the DeCaro children]. Courtney gets in the car with the dog and Mr. DeCaro drives off to pick Ricky up from school. In the meantime, the other two children come home and are in the house. In the house with their mother's killer.
>
> . . . .
>
> It was either her or me and I wasn't going back to prison.
>
> How does that relate? Well, DeCaro had him on the hook after he did the first one. He knew if DeCaro got divorced there was a chance, and I'm willing to bet that DeCaro told him, my wife's going to tell on us. You got to go through with this because you're going to go down if I get

divorced. My wife knows about this and I told her you were in on it and you are going to go down if I get divorced. My wife knows about this and I told her you were in on it, and you are going to go down. And that's why the sentence makes sense.

> . . . .
>
> He killed the mother of four children after he had been in the house with those children.
>
> . . . .
>
> Why would he be driving around keeping the property for a while? He didn't know Melanie was coming there at eight o'clock that night. And after nine o'clock any phone calls to Richard DeCaro are coming from the family.

Basile alleges that the above arguments were impermissible because they were not supported by the record. The first three arguments were not objected to, and no claim is made that any of those arguments were preserved for appeal. Objection to the last comment was overruled as a reasonable inference from the evidence.

Basile's conviction will be reversed on plain error for improper argument only if he establishes that the comments had a decisive effect on the jury's determination. *State v. Parker*, 856 S.W.2d 331, 333 (Mo. banc 1993). The evidence shows or permits an inference that Basile was sought out by Richard DeCaro to both steal vehicles and kill Elizabeth DeCaro, that Richard DeCaro picked Basile up the morning of the murder, that the dog was removed from the DeCaro home at about 11:40 a.m., that Basile did not have his own transportation to the DeCaros', that Basile left the DeCaro home in the DeCaros' Blazer, that there were no signs of forced entry, and that Basile felt the need to kill Elizabeth to avoid her potential disclosure of the insurance fraud scheme and his being sent back to prison.

The prosecuting attorney's comments reflect a reasonable inference from the evidence, which showed that Basile was probably in the house hiding until Elizabeth DeCaro got home. In that space of time, at least two of the DeCaro children came

home from their half-day at school to prepare for their trip to the lake. The trial court did not err by failing to sua sponte declare a mistrial after these remarks were made. Contrary to Basile's assertions here, these comments were not "egregious errors, each compounding the other" comparable to the situation in *State v. Storey*, 901 S.W.2d 886, 902 (Mo. banc 1995).

■ Basile makes a related claim that the motion court clearly erred by concluding that trial counsel was not ineffective for failing to properly object to prosecutorial statements and preserve those objections for appeal. Counsel cannot be deemed ineffective for failing to make nonmeritorious objections. *Six*, 805 S.W.2d at 167.

### 2.

Basile cites three instances where the prosecuting attorney stated personal opinions, which Basile claims constituted plain error or, in the alternative, that counsel was ineffective for failure to object.

■ The instance in which an objection was made included the following statement by the prosecuting attorney:

Now, what about the dog. The dog is more important than any of us think. The dog barked at strangers, jumped on strangers, was protective of those children. The dog was home in the morning when the kids left and dad wasn't there. Dad shows up to pick Ricky up, and we debated whether to put the children on, but that was the only way we could prove this.

At that point, an objection was interposed that the prosecuting attorney was relying on "personal hardship." No motion for mistrial was made. The prosecuting attorney immediately withdrew the comment. The retraction was sufficient to correct any impropriety and overcome a claim that a motion for mistrial should have been made and sustained. *State v. Turnbull*, 403 S.W.2d 570, 573 (Mo. 1966). This comment, alone or in conjunction with others, did not have the pervasive prejudicial effect necessary to require the grant of a mistrial sua sponte. *State v. Weaver*, 912 S.W.2d 499, 512 (Mo. banc 1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 153, 136

L.Ed.2d 98 (1996). Counsel will not be deemed ineffective for failing to make a motion which would properly be denied.

■ The second and third instances of alleged "injection of personal opinion" by the prosecuting attorney were the following:

Now, on Saturday sometime he tells Doug that he took his gun back to his father. I think that's a lie. He threw the gun out. He was looking for a throw away. Here's a man who wears gloves so there is [sic] no fingerprints. He's not going to keep the murder weapon around.

. . . .

I think you have, if you think of all that evidence, if you weigh all the circumstantial evidence, if you look at the direct evidence, the eyewitness testimony, the testimony and Borak and Meyer and Wells and Sue Jenkins, they are not lying, they are telling you the truth.

No objection was made. Most of the arguments were at least supported by inferences from evidence in the record. These arguments were certainly not so egregious as to be outcome determinative and, as such, do not constitute plain error. *Storey*, 901 S.W.2d at 902. The comment regarding the gun being thrown away, even if objectionable, was not reasonably likely to infect the proceeding in such a manner as to undermine confidence in the outcome. Thus, there was no prejudice from counsel's failure to object.

### 3.

■ Basile argues that the prosecuting attorney was permitted to make improper adverse inference arguments from defendant's failure to call his father, Jack Basile, to testify. The specific arguments were as follows:

Now, we didn't have Jack Basile here to testify, his dad. They could call him if they want, it's his family. Neither one of us called him. The state has an ethical obligation if we call a witness—

. . . .

If they wanted you to hear from Jack Basile they could have got him here. They didn't bring him here.

. . . .

Now, we already talked about some of the witnesses not here, Gayle Dorman, Desi, his sister, they are available as much to the defense as they are—

■ Basile's lawyer interrupted to object to the above statements and to move for a mistrial. The motions and objections were overruled. Adverse inferences for failure to call witnesses are permissible if the witness is peculiarly available to the defendant, and a witness is said to be peculiarly available if he or she is one who would be logically expected to testify in a defendant's favor, such as a friend or relative. *State v. Neil,* 869 S.W.2d 734, 739 (Mo. banc 1994). In this case, the State was entitled to argue the adverse inference as to defendant's father and sister.

As to Gayle Dorman, a girlfriend of defendant's foster·brother, an adverse inference argument would have been impermissible. However, the State did not make an adverse inference argument as to her. The prosecuting attorney, prior to being interrupted, only indicated that Basile's sister and Ms. Dorman were equally available to both parties. The State never completed the statement regarding what adverse inferences might be drawn from Gail Dorman's failure to testify and, therefore, no prejudice resulted.

■ Defendant also alleges that the prosecutor improperly argued in response to a defense counsel statement that she was not Perry Mason, as follows: "As I recall, all of Perry Mason's clients were not guilty, and you didn't hear her say that Dan didn't do it." Basile's objection to this statement was sustained. He now claims that this statement warranted a mistrial because it shifted the burden of proof and compromised the attorney/client privilege. The fact that the objection was sustained was sufficient to correct any error in the comment. *State v. Shurn,* 866 S.W.2d 447, 461 (Mo. banc 1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). Defendant fails to establish that he was entitled to a mistrial, therefore counsel was not ineffective in failing to make such a motion.

4.

■ Basile claims plain error occurred because the prosecuting attorney was allowed to personally attack and denigrate defense counsel. The relevant excerpts from the transcript read as follows:

[PROSECUTOR]: Self-defense, protection, bull. And think of the physical evidence you heard from Mr. Buel. He says the bullet is a little defective, like something is wrong with the gun. Like the kind of gun—

[DEFENSE COUNSEL]: Objection, he indicated that the mutilation was caused by hitting bone. That was his testimony. This is a misstatement of facts.

[PROSECUTOR]: Now it's open field on my argument. She will object all the way through.

[THE COURT]: The objection is overruled.

. . . .

[DEFENSE COUNSEL] [interrupting State's closing argument]: This is misleading. There were payments made by Richard DeCaro.

[PROSECUTOR]: I will object. I didn't object to her closing—

[THE COURT]: I will overrule the objection.

[PROSECUTOR]: Either she wants you to hear my argument or she doesn't.

The defendant compares this case to those in which the State argued that defense counsel suborned perjury by fabricating evidence, represented criminals "time and time again," or where the State argued that defense counsel "browbeat witnesses." *State v. Mosier,* 102 S.W.2d 620, 626 (Mo.1937); *State v. Spencer,* 307 S.W.2d 440, 446–47 (Mo.1957). None of those sorts of statements occurred here. Not every statement of frustration with opposing counsel in response to nonmeritorious objections results in plain error. Neither are such comments clearly an attack on the integrity of opposing counsel. A criminal trial is an adversarial process. Occasional outbursts are expected, but not necessarily approved. The appropriate action in such cases is best left to the sound discretion of the trial judge. Appellate courts will interfere only where there is a reasonable likelihood that it affected the outcome of the case.

Contrary to Basile's allegations, here the comments were not "highly improper" attacks on the integrity of counsel so as to suggest that there was a miscarriage of justice. This point is denied.

### B. Penalty Phase Argument

#### 1.

■ Basile claims that the prosecutor personalized the argument when he said, "And if Elizabeth were here today, I'm sure she would tell you—because she would care for a person like Danny—I'm sure she would tell you to give him a fair trial in this portion of the case." Personalized arguments are improper when they suggest that should the defendant be acquitted, the jurors or their families would be in personal danger. *State v. Copeland*, 928 S.W.2d 828, 842 (Mo. banc 1996), *cert. denied*, — U.S. —, 117 S.Ct. 981, 136 L.Ed.2d 864 (1997). The argument cited does not qualify as "personalizing" the argument. There was no error.

■ Basile also claims that the following was improper personalization, although no objection was interposed to the argument:

Now, we all welcome getting home. Everyone welcomes getting home. It's probably more poignant for you right now, and the security when you walk in the door, kick off your shoes, let your hair down, I'm home.

Think about Elizabeth's last time coming home. Sad, children gone out of town with the husband. Never been home alone before. But walking into the sanctuary, to that place where we all rest. Walking in, going up, getting a drink of water at the sink, and suddenly a hand on her back.

Nothing said in the above portion of the closing argument in the penalty phase indicates that the jurors or their families were in any personal danger. This claim of error is denied.

#### 2.

■ Basile next asserts the following statements made during the penalty phase argument constitute plain error:

Just imagine the terror when she was aware of this person behind her, this person grabbing, even if it's just for a few seconds of terror that rippled through her body and racked her. And then what? Cold steal [sic], searing heat and eternity. From a man who says I'm not someone to fuck with anymore a year earlier.

. . . .

He had to get close enough to put two bullets in the back of her head. She smelt the stench of evil. She felt the sweat of evil. Elizabeth DeCaro died in his grimy hands. Either he was holding her up when he shot her or had her down, which is worse, on her knees or laying on the ground and as he bent over her and put two shots in her.

Mr. Evil watched her die. You know the difference between this and this is Mr. Evil. No amount of child abuse justifies this.

The references to Mr. Evil could be deemed inflammatory if they were unrelated to relevant evidence that came in during the punishment phase. Basile wrote to his ex-girlfriend, Lisa Carr, on stationery imprinted with a Satanic figure around which was written, "The Desk of Evil." The statements, including "Mr. Evil," properly went to defendant's view of his own character and was appropriate in considering punishment. *State v. Kinder*, 942 S.W.2d 313, 333 (1996). These arguments were supported by the evidence or were reasonable inferences from the evidence. Failure to object or to make the proper objections to these nonmeritorious claims does not constitute ineffective assistance of counsel.

#### 3.

■ At one point, the prosecuting attorney stated that the murder of Elizabeth DeCaro was "one of the most vicious, cold-blooded, premeditated murders that this county has ever seen." Though this issue was not preserved for appeal, Basile claims that the argument is identical to the one condemned by this Court in *Storey*, 901 S.W.2d at 900, where the prosecuting attorney argued that the murder was "about the most brutal slaying in the history of the

county." Though this Court does not approve of the comment, it was not as prejudicial as the comment in *Storey* because, here, it was not combined with other "egregiously" improper arguments. Here the statement merely argues a matter of common knowledge that killing someone in their own home by shooting them twice in the back of the head after waiting all day in the basement is an extremely unusual and brutal crime. *State v. Sturrs,* 51 S.W.2d 45, 46 (Mo.1932); *State v. Skelton,* 828 S.W.2d 735, 737 (Mo. App.1992). There was no plain error. Moreover, the comment does not indicate that counsel's failure to object was conduct that "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

### 4.

■ Though not objected to, Basile complains of two additional arguments not supported by evidence:

> ... [t]he the lady on the porch, the milkman, all the people in the neighborhood who were in danger when they came by here, ...
>
> . . . .
>
> He endangered the lives of children, innocent children, he killed their mother, he endangered the lives of the people that came by that house.

These are proper references based upon the evidence that Basile was in the house waiting for Elizabeth to come home. There was also evidence that at least two of the children were home part of the time and that visitors came by the house. Indeed, Elizabeth DeCaro's sister and a friend ultimately entered the house. Thus, the arguments that defendant's conduct put others at risk is a proper inference from the evidence and was relevant in assessing punishment. Assertions of ineffective assistance of counsel and plain error on this basis are denied.

### 5.

■ During the punishment phase, the prosecutor reviewed the numerous proba-tions that Basile had been granted in the past, and then said:

> How many more chances are we going to give him.
>
> . . . .
>
> Have a right to be upset with the system? You bet. There are plenty of us, and I know we are part of the system—

The defendant then interposed an objection, which was sustained. Still later, the prosecuting attorney said, "How do we stop the violence unless we make the killers responsible for their acts[?] This is why we have the death penalty." No objection was interposed at that point.

■ All of the above are valid pleas for strict law enforcement, which are permissible in the penalty phase argument. *State v. Richardson,* 923 S.W.2d 301, 322 (Mo. banc 1996), *cert. denied,* — U.S. —, 117 S.Ct. 403, 136 L.Ed.2d 317 (1996); *State v. Newlon,* 627 S.W.2d 606, 618 (Mo. banc 1982), *cert. denied,* 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982); *rehearing denied,* 459 U.S. 1024, 103 S.Ct. 391, 74 L.Ed.2d 520 (1982). The argument was not erroneous and, therefore, counsel will not be deemed ineffective for failing to object.

### III.

■ Basile asserts the trial court erred in failing to declare a mistrial and in overruling defense objections to prosecutorial comments and actions during voir dire, presentation of guilt phase evidence, and penalty phase evidence. Basile claims the motion court erred in denying relief based upon allegations of ineffective assistance of counsel when counsel failed to object to the prosecuting attorney's comments and actions. In the absence of a manifest injustice or a miscarriage of justice, the plain error rule will not be used to justify review of points not preserved for appeal. *State v. Tokar,* 918 S.W.2d 753, 769 (Mo. banc), *cert. denied,* — U.S. —, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996); *State v. McMillin,* 783 S.W.2d 82, 98 (Mo. banc), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). In addition, a Rule 29.15 motion is not to be used as a substitute for an appeal. *Rule 29.15(d);*

*State v. Twenter,* 818 S.W.2d 628, 641 (Mo. banc 1991).

### A.

■ The prosecuting attorney said the following to venireperson Kathy Gruenefeld during voir dire:

This is a case in which it is alleged that the Defendant murdered the mother of four children. Obviously we are interested in having people from all walks of life and backgrounds on the jury including mother's [sic].

I mean, the fact that you are a mother could create a hardship here but do you see how we would want somebody with your background on the jury?

A defense objection to the form of the question was sustained. There was no request for a mistrial. Gruenefeld was not impaneled for Basile's trial. Thus, manifest injustice is not discernible. Neither is prejudice shown so as to establish ineffective assistance of counsel.

■ Basile again argues that defense counsel was personally attacked by the prosecution. The first instance was when the prosecuting attorney objected to defense voir dire questions, calling them "contrived." The statement was part of an objection to defense counsel asking what potential jurors thought about the death penalty in first degree murder cases. After extended argument at the bench, the objection was overruled.

The second instance of alleged personal attacks on defense counsel occurred when the prosecuting attorney told venirepersons, "[T]he State doesn't pick its witnesses. The Defendant might pick his . . . ." The court sustained the defense objection to this statement. Then, at the request of defendant, the court directed the venire members to disregard the statement. That was sufficient to correct any suggestion of impropriety on the part of defense counsel. In neither instance was the prosecution permitted to degrade defense counsel through "highly improper" comments. *See Spencer,* 307 S.W.2d at 446–47; *Weaver,* 912 S.W.2d at 514. There was

no manifest injustice in the trial court failing to sua sponte grant a mistrial.

■ Basile claims that the prosecutor injected his personal opinion about the case during voir dire when he said, "He committed a very terrible murder." In context, it is apparent that the prosecuting attorney was hypothesizing a jury's finding of guilt of "a very terrible murder" as a predicate to considering death or life imprisonment. The prosecuting attorney was not injecting any personal opinions about this specific case. The claim here is without merit.

■ By way of describing the process that is followed in capital murder cases, the prosecuting attorney made the following comments during voir dire:

There are certain statutory aggravating circumstances. There are several different aggravators and numbers. The Court instructs you. First of all, the Court makes the determination whether or not there is any evidence to even submit those aggravators.

Defense counsel objected, and the prosecuting attorney immediately withdrew the statement. Basile now argues that this comment misinforms the jury that the court would allow submission of aggravators only if the court found the State's evidence credible.

First, the immediate corrective action prevented any prejudice. Second, the prosecutor did not say, as is argued here, that aggravators would be submitted only if the judge believed the State's evidence to be true. These claims of ineffective assistance of counsel and plain error are groundless.

### B.

■ During the guilt phase of the trial, the prosecuting attorney asked witness Craig Wells, "Did you know Elizabeth DeCaro was going to come forward and reveal [Basile], as part of a divorce, that he had done the van with Rick the first time?" Wells answered in the negative. A defense objection to the question and answer was made and sustained. Defendant now claims the question was asked knowing that it called for hearsay. Thus, he argues it was plain error not to grant a mistrial and ineffective assistance of

counsel to fail to ask for a mistrial. The hearsay objection, which was sustained by the court, was sufficient to overcome both claims. Nothing suggests that the question and answer inflamed the passions of the jury so as to amount to manifest injustice or undermine confidence in the outcome of the case. There was no plain error and no ineffective assistance of counsel on these claims.

■■ State's witness Lt. Patrick McCarrick testified that Susan Jenkins was referred to as a confidential informant. When asked why, McCarrick answered, "... I believe the Defendant was still at large and she was afraid for her safety, so we didn't want to tell anybody who she was." Basile's objection to this testimony was overruled. He now claims the question leading to this statement was irrelevant and designed to prejudice him. This testimony is relevant because it explains Jenkins' delay in coming forward to turn Basile in to the police. Admission of relevant evidence is not reversible error.

Basile further argues that the prosecuting attorney injected "unfair insinuations" into the case by holding a picture of Elizabeth DeCaro's body in front of Basile's face for an extended period of time. During a bench conference, defense counsel accused the prosecuting attorney of holding the photograph in front of Basile, staring at him, and showing the picture to the jury before it was admitted into evidence. The prosecuting attorney denied doing any of these things. The court then instructed the prosecuting attorney to show the exhibit to the jury only after showing it to defense counsel and offering it into evidence. Defense counsel then waived looking at the pictures, and they were admitted. The trial judge did not note that the prosecuting attorney had engaged in the improper behavior complained of by Basile's counsel, although she was obviously in a position to observe the conduct of both the attorneys and Basile. The record presented does not support this claim, and it is denied.

### C.

■■ During the penalty phase, the victim's mother testified as to the impact of Elizabeth DeCaro's death on the family. Some observers began to cry and, apparent-

ly, the prosecuting attorney also had trouble maintaining his composure. Basile's attorney asked for a recess, which was granted. Basile now contends that the prosecuting attorney improperly injected himself and his emotions into the trial. Again, the trial court was in a far better position to determine any prejudicial effect that existed due to the events described. The trial court's immediate corrective action in granting a recess is sufficient to rebut any claim that the jury verdict was based on the personal emotional reactions of the prosecuting attorney. This claim is denied.

### IV.

Basile claims that improper evidence of other crimes, bad acts and bad character were admitted. Again, most of the claims are reviewable only as plain error or in conjunction with claims of ineffective assistance of counsel.

### A.

■■■ Without objection, Susan Jenkins testified that she accompanied Basile when he was looking for a place to strip the van. One of several stops they made was at Bill Borak's house. There, Basile "smoked a joint" with four others. Basile now alleges ineffective assistance of counsel for failure to object to the admission of evidence. At the post-conviction motion hearing, defense counsel testified she did not want smoking marijuana to be perceived as "some big, bad act." The motion court found that counsel did not object as a matter of trial strategy. The motion court did not clearly err in finding counsel's conduct to be sound strategy. Defense lawyers are given a broad range of leeway in determining what strategy to follow, and that leeway extends to decisions as to when to make objections. In addition, the isolated mention of using marijuana did not amount to plain error.

### B.

■■ State's witness Edward Murphy Giegerich testified that he taught Basile in a basic electricity class for approximately nine weeks. For a few weeks, when both of them

were living in Fenton, Missouri, Giegerich gave Basile a ride home from the class. Giegerich testified that, among other topics discussed in the car, Basile mentioned that his girlfriend was pregnant. This noncriminal fact, while only marginally relevant, is not the sort of evidence of bad conduct that is likely to inflame the jury against the defendant and result in manifest injustice or undermine confidence in the outcome of the case. Thus, there was no plain error in admitting the evidence. Defense counsel was not ineffective in failing to object to it.

## C.

Basile alleges that plain error and ineffective assistance of counsel occurred when the State adduced evidence of Basile's involvement in car thefts and stripping the cars for parts.

■ At the post-conviction hearing, defense counsel testified that she made a strategic decision not to object to this evidence in order to promote the defense theory that Basile was only a car thief and merely was being framed as a murderer. The trial court did not clearly err in finding this to be within the range of permissible strategic decisions. Thus, counsel was not ineffective.

■ In addition, there was no plain error in admitting the evidence. The evidence of Basile's involvement in stealing and cutting up cars was necessary to present a clear and coherent picture of the events surrounding his involvement in Elizabeth DeCaro's murder. In order to establish Basile's involvement, some evidence of his experience in dealing with stolen cars was essential and admissible. *See State v. Harris,* 870 S.W.2d 798, 810 (Mo. banc), *cert. denied,* 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994).

## D.

■ On redirect, Jeffrey Niehaus, Basile's former roommate, testified that their living arrangement did not work out because Basile had two girlfriends at once and treated one of them "fairly bad." Basile claims his counsel was ineffective for failing to object to this testimony. Given all the evidence in this case, this short reference to a past

non-crime cannot be held to have had a decisive effect on the outcome so as to result in manifest injustice. Neither is the evidence sufficient to undermine confidence in the outcome of the case. The claim of ineffective assistance of counsel on this point is denied.

## E.

■ Kenneth Robinson testified that Basile told him about DeCaro's plot to murder his wife and to steal vehicles for insurance money. Robinson testified that his response to this information was, "I told [Basile] first thing he ought to do is be back in jail or something. . . ." Basile claims that even though no objection was made, it was plain error to allow this statement since there was a ruling on Basile's motion to limit evidence of prior criminal acts. Basile also asserts plain error regarding Doug Meyer's statement to Basile that buying a gun was in violation of Basile's parole. Basile further argues that counsel was ineffective in failing to object to the statements by Robinson and Meyer.

Basile overlooks the fact that Meyer testified that Basile said it was "either him or her and [he wasn't] going back to jail." Inasmuch as that evidence was in the case, the responses by Robinson and Meyer about violating parole had no prejudicial effect. Moreover, the responses are relevant to explain how Basile became involved in a plot with Richard DeCaro and his difficulty in being able to get a gun to carry out the plot. There was no plain error on this point.

■ With regard to the claim of ineffective assistance of counsel, at the motion hearing defense counsel stated that it was trial strategy to present a picture of Basile as "just a thief," not a murderer. None of his prior jail time or the parole he was under involved murder. The motion court did not clearly err in finding defense counsel's failure to object to be consistent with a reasonable trial strategy.

## V.

■ Basile asserts that the trial court erred because it should have sua sponte de-

clared a mistrial upon the admission of hearsay statements by State's witnesses. Generally, inadmissible hearsay which comes into the record without objection may be considered by the jury. *State v. Thomas,* 440 S.W.2d 467, 470 (Mo.1969). In the absence of a timely objection or proper motion to strike, hearsay evidence is admitted. *State v. Griffin,* 662 S.W.2d 854, 859 (Mo. banc 1983), *cert. denied,* 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 153 (1984).

Basile further alleges that counsel was ineffective for not objecting to the evidence. Not every failure to object to evidence amounts to ineffective assistance of counsel. *State v. Gray,* 887 S.W.2d 369, 380 (Mo. banc 1994), *cert. denied,* — U.S. —, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995). To establish counsel's performance was deficient, Basile must overcome the strong presumption that counsel's conduct falls within the wide range of permissible, reasonable professional assistance. *Id.* at 381.

### A.

■ Melanie Enkleman, Elizabeth DeCaro's sister, testified without objection that after the accident in the garage with the van in which Richard DeCaro ran over her leg, Elizabeth asked Richard, "What are you trying to do, kill me?" Enkleman also stated on the day of the murder, Elizabeth told her at work that she was scared, that Elizabeth made three telephone calls in Enkleman's presence after which Elizabeth told Enkleman Richard DeCaro sounded nervous. "He's up to something. It is just like the day I went through the wall and the day the van blue [sic] up." Enkleman also testified that Elizabeth said that Richard was paranoid, was trying to kill her, was dealing drugs, that Richard knew guys who could blow up the van, and that Richard admitted to having an affair with his secretary.

Similarly, Mary Pohlman Marchetto testified that at a birthday party on February 10th, the night the van was stolen, Elizabeth and Richard left early. Elizabeth later told her that Richard probably had the van stolen and that Richard had had an affair. It is complained that Enkleman was allowed to testify that Richard DeCaro told her that Elizabeth was having a private investigator follow him, and that he was dealing in drugs.

■ The apparent purpose of offering the statements of Elizabeth DeCaro was not to prove the truth of her statements, but to show that the DeCaros' marital relationship was breaking up and, further, that Elizabeth had knowledge of the insurance fraud scheme involving the van. Her attitude toward Richard and knowledge of his criminal involvement were relevant to establish Richard DeCaro's motive to murder Elizabeth. Out of court statements offered to prove knowledge or state of mind of the declarant are not subject to a hearsay objection. *State v. Chambers,* 891 S.W.2d 93, 104 (Mo. banc 1994); *State v. Parker,* 886 S.W.2d 908, 925 (Mo. banc 1994); *rehearing denied, cert. denied,* — U.S. —, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995); *State v. Shurn,* 866 S.W.2d 447, 457 (Mo. banc 1993), *cert. denied,* 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994).

■ None of the above statements directly implicated defendant in the crime. In fact, admission of evidence that Richard DeCaro was nervous, had tried to kill Elizabeth, used drugs, was mentally ill, and had arranged to steal the van are all consistent with the defense theory that Basile was merely a thief who was framed for a murder committed by Richard DeCaro. Because the claimed hearsay testimony failed to implicate defendant, there was no plain error. Furthermore, failure to object was consistent with a reasonable defense strategy of placing as much blame as possible on Richard DeCaro for the murder. No ineffective assistance of counsel is established.

### B.

■ Basile complains that James Torregrossa was permitted to testify that DeCaro asked him about getting rid of his van and his wife, and that DeCaro said that he would not want to wish marriage on anybody. He further stated that DeCaro told him to lie if pressured by police to disclose information about this conversation. Craig Wells testified that Richard DeCaro asked him if he knew anyone who could get rid of the van for

him. Wells further testified that he called DeCaro after the murder to tell DeCaro that police had found the Blazer and that Basile was in custody. Wells testified that Richard DeCaro denied knowing Basile in that conversation. Testimony by witnesses of statements of a co-conspirator offered to show the furtherance of the conspiracy is admissible. *State v. Isa*, 850 S.W.2d 876, 893 (Mo. banc 1993). Thus, the statements of DeCaro were admissible against Basile.

### C.

▮▮▮▮ Basile further complains of testimony by Susan Jenkins that on the evening when she was with him trying to decide how to get rid of the van, Basile at one point was observed whispering to his mother. Jenkins testified she heard him say something about a VCR. Generally, statements of the defendant are excepted from the hearsay rule. In this particular instance, we are unable to discern any prejudice from this testimony.

### VI.

### A.

Basile claims error in overruling defense objections to victim impact evidence and certain motions relating to victim impact evidence.

Through pictures, letters and stories about Elizabeth, the victim's mother and sister testified as to the effect Elizabeth DeCaro's death had on the lives of surviving family and friends. Elizabeth's mother, Georgianna Van Iseghm, read from a diary she kept about her daughter's numerous good qualities. Melanie Enkleman, the victim's sister, read a poem and a letter by another sister, Theresa. Enkleman also read from her own prepared statement explaining her feelings about the loss of her sister. Basile objects to all the victim impact evidence, claiming it was so emotional and inflammatory and that its prejudice far outweighed any probative value and rendered his trial fundamentally unfair.

Basile takes special exception to two paragraphs of a letter written by Theresa and three paragraphs of Enkleman's prepared statement. The critical portion of Theresa's letter read by Enkleman states as follows:

To truly describe Elizabeth to you would take more time than we both have. If I did have to describe her, I would say full of life and full of and an [sic] outgoing love for everyone. And that is what you, Daniel Basile, took away from me and my family.

You took away her sweet smile, her warm personality and her generous heart. You took a family as a whole and tore a very important part of it away. That ripped out part, Dan, was my sister. And so as you listen to this poem, think of the lives that you've affected, the children who's [sic] mother has been selfishly and unfairly taken away, and the family, my family, that will never be the same all because of you.

The specially objectionable portion of the Enkleman statement reads as follows:

You have also hurt all our children. Elizabeth's children must grow up knowing that their mother was murdered for greed, in their own home, waiting for her, which is supposed to be our safe place. The counseling they will need to get through this is expensive, and no child should be put through this. My thirteen-year-old son still cannot stay home by himself because he's terrified someone is hiding and they want to murder him.

I want you to know what you did to my family is unforgivable, but we will survive with love because we will not allow someone like you to destroy us.

You see, I saw what you did. Where everyone here has just heard what he did. I saw Elizabeth lying on the floor. I saw her not breathing. I saw them turning her over and the blood on her face. I saw them try to save her. I saw them lift her up and I saw her neck as red as fire. I saw them put her on the stretcher with the tubes in her and I saw—and I knew then that she was dead. But I prayed to God that somehow she would live. And I pray to God now that justice will be served.

Defense counsel objected to the statements of Enkleman and requested a mistrial.

▮▮▮▮▮ The State "is permitted to show that the victims are individuals whose deaths

represent a unique loss to society and to their family and that the victims are not simply 'faceless strangers.'" *Gray*, 887 S.W.2d at 389. "[The] State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant." *Payne v. Tennessee*, 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991). All the victim impact evidence in this case, including that which is quoted, was directed at defendant's moral culpability in causing harm to the victim and her family.

■ Nevertheless, defendant claims that the victim's family members' characterizations and opinions about the crime, the defendant and the appropriate sentence violate the Eighth Amendment to the Constitution. Here none of the witnesses engaged in the conduct complained of. To say that Basile had "taken away" the victim from her family, that he had hurt the family by what he had done, and in stating that she prayed "to God now that justice will be served" are not expressions of opinion about the crime, characterization of the defendant, or a suggestion as to the appropriate sentence. Therefore, the Court concludes that the victim impact witnesses' testimony did not "so infect the sentencing proceeding as to render it fundamentally unfair," as claimed here. *Id.* at 831, 111 S.Ct. at 2612. The motion to exclude the evidence was properly denied.

### B.

■ The statutory scheme for imposition of the death penalty provides that in the penalty phase, "evidence may include, within the discretion of the court, evidence concerning the murder victim and the impact of the crime upon the family of the victim and others." *§ 565.030.4, RSMo 1994.* Basile claims that these statutes violate due process because they do not provide for an "appropriate, channeled, guided way for jurors to consider victim impact evidence." Our statutes and instructional scheme satisfy the due process requirements for imposition of the death penalty by requiring jurors to find specific aggravating circumstances to consider all the

evidence and any mitigating circumstances before imposing the death penalty. *§ 565.032, RSMo 1994; Storey*, 901 S.W.2d at 902. This claim is denied.

■ Basile further makes a somewhat convoluted argument that victim impact testimony is only proper if it relates to a statutory aggravator submitted by the State. No cases support this proposition. Under our statutes, there is no requirement that the victim impact statement evidence be related to the specific aggravators submitted by the State. It is sufficient that it is relevant to inform the jury as to the effect of the crime for which the defendant is being sentenced even if no instruction is given regarding the evidence.

### C.

Basile claims counsel was ineffective in failing to preserve the objection to the victim impact testimony. As previously noted, he has failed to establish that it was error to admit the victim impact testimony. An objection was made early on and renewed with a continuing objection. This claim of ineffective assistance of counsel is without merit.

### VII.

■ Basile argues that the trial court plainly erred in submitting Jury Instruction No. 14 in the penalty phase, and the post-conviction court erred in failing to find ineffective assistance of counsel for not objecting to the instruction. Instruction No. 14 as given reads as follows:

If you have found beyond a reasonable doubt that one or more of the aggravating circumstances submitted in Instruction No. 13 exist, then, in determining the punishment to be assessed against the defendant for the murder of Elizabeth A. DeCaro, you may also consider:

1. Whether defendant pled guilty to burglary in the second degree on October 23, 1984, in Cause No. 512542 in the circuit court of St. Louis County, Missouri.

2. Whether defendant pled guilty to stealing property of a value of at least $150.00 on October 23, 1984, in

Cause Number 512542 in the Circuit Court of St. Louis County, Missouri.

3. Whether the defendant threatened the life of Dave Carr in a letter written to Lisa Carr postmarked April 26, 1994.

4. Whether defendant threatened the life of Dave Carr in a letter written to Lisa Carr postmarked June 27, 1995.

5. Whether defendant choked Therese McCormack by placing his hands around her neck in the summer of 1984.

The instruction failed to comply with MAI–CR3d 313.41 by leaving out the following paragraphs:

You are further instructed that the burden rests upon the State to prove the circumstances beyond a reasonable doubt. On each circumstance that you find beyond a reasonable doubt, all twelve of you must agree as to the existence of that circumstance.

If you do not unanimously find from the evidence beyond a reasonable doubt that the circumstances, then that circumstance shall not be considered by you in returning your verdict fixing the punishment on the defendant.

The jury did not find that any of the nonstatutory aggravating circumstances submitted in the instruction existed. Thus, any error in giving the instruction was not prejudicial. Moreover, Instruction No. 18, patterned after MAI–CR3d 313.48, required the jury to make its findings under Instruction No. 14 "beyond a reasonable doubt." As stated in *State v. Petary*, 781 S.W.2d 534, 542 (Mo. banc 1989), *vacated and remanded*, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990); *reaffirmed*, 790 S.W.2d 243 (Mo. banc); *cert. denied*, 498 U.S. 973, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990), "The omission of the requirement that the jury find the nonstatutory aggravating factors beyond a reasonable doubt was remedied in this case by [a separate instruction] which included the requirement." The same is true here.

■ On a claim of plain error in an instruction, the defendant is not entitled to any presumption of prejudice. Plain error exists in an instruction only if the trial court misdirects or fails to instruct the jury to such an extent that a manifest injustice results. *State v. Doolittle*, 896 S.W.2d 27, 29 (Mo. banc 1995). Because of an absence of any prejudice flowing from counsel's failure to object, counsel was not ineffective.

## VIII.

■ Basile alleges the trial court erred in submitting Instruction No. 13, the statutory aggravating circumstances instruction. It states that in determining Basile's punishment, in order to assess the death penalty, the jury had to first unanimously determine beyond a reasonable doubt that one or more of the following aggravating circumstances exists:

1. Whether the defendant murdered Elizabeth A. DeCaro for another, for the purpose of defendant receiving money or any other thing of monetary value from Elizabeth A. DeCaro or another.

2. Whether the defendant, as agent or employee of Richard DeCaro and at his direction, murdered Elizabeth A. DeCaro.

Defendant alleges that these aggravating circumstances are duplicative. The aggravating circumstances are not identical. Indeed, they "emphasize different facets of [the same] criminal activity." *State v. Jones*, 749 S.W.2d 356, 365 (Mo. banc); *cert. denied*, 488 U.S. 871, 109 S.Ct. 186, 102 L.Ed.2d 155 (1988); *State v. Wise*, 879 S.W.2d 494, 521 (Mo. banc 1994); *cert. denied*, 513 U.S. 1093, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995). The first aggravator focuses on whether defendant's motive was to receive money. The second aggravator focuses on whether defendant committed the crime as an agent for another person. Different factors may have motivated the defendant. Based on the evidence presented, the jury could have found one or both of the aggravators in consideration of punishment. Doing so does not necessarily lead to an arbitrary or capricious imposition of the death penalty, as Basile suggests.

## IX.

Basile claims that Missouri's death statute and its provisions for proportionality review violate his constitutional rights to equal protection, due process, fair trial and freedom from cruel and unusual punishment. Defendant claims that the Court must compare Basile's sentences with the sentences imposed on similarly situated defendants who did not receive the death penalty to ensure that his death sentence is not disproportionate and to ensure a "meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not." *Gregg v. Georgia*, 428 U.S. 153, 198, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976). In support of this argument, Basile reiterates facts relied on under other arguments. Most notably, he relies on the victim impact testimony by the victim's mother and sister, and that the victim's mother improperly delved into religious matters during the victim impact testimony.

■ Defendant confuses two arguments. The first is whether the Court believes that the death sentence was imposed because of passion, prejudice or arbitrary factors. The Court, after reviewing the entire record of more than 2,500 pages, including the relatively few pages devoted to victim impact evidence, concludes that the sentence was not imposed because of passion, prejudice or arbitrary factors. Moreover, the Court concludes that this case is similar to other cases in which the death penalty was imposed where a murder was committed for hire, *State v. Blair*, 638 S.W.2d 739 (Mo.banc 1982); *cert. denied*, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983) and *State v. Bannister*, 680 S.W.2d 141 (Mo. banc 1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985), or where the defendant committed the crime for financial gain, *State v. Copeland*, 928 S.W.2d 828, 842 (Mo. banc 1996); *cert. denied*, —— U.S. ——, 117 S.Ct. 981, 136 L.Ed.2d 864 (1997); *Tokar*, 918 S.W.2d 753, 769 (Mo. banc); *cert. denied* —— U.S. ——, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996); *State v. Ramsey*, 864 S.W.2d 320 (Mo. banc 1993); *cert. denied*, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994); *State v. Wise*, 879 S.W.2d 494 (Mo. banc 1994); *cert. denied*, 513 U.S. 1093, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995). The death sentence here is not disproportionate.

■ Second, contrary to Basile's argument, our proportionality review provided in § 565.035 is not required by the Constitution. *Ramsey*, 864 S.W.2d at 328; *Weaver*, 912 S.W.2d at 522; *State v. Smulls*, 935 S.W.2d 9, 24 (Mo. banc 1996); *State v. Whitfield*, 939 S.W.2d 361, 372–373 (1997). Basile's claim that it was unconstitutional to compare this case to other similar cases in which the death penalty was imposed is meritless.

## X.

■ Basile alleges that the motion court erred in overruling his Rule 29.15 motion. He alleges that his defense counsel was ineffective in failing to engender sympathy in her closing argument during the guilt phase that would have prevented imposition of a death sentence in the penalty phase. As has previously been noted, defense counsel's strategy was to present Basile as a car thief, not a murderer. In closing argument of the guilt phase, she made comments which were consistent with that strategic decision. Specifically, her closing argument included the following:

> This case is not about whether or not you like Dan Basile. Because I submit to you that you shouldn't. And that he should and will be punished for what he has done.... Dan is at school. He's trying to part [sic] the cars, sell the parts to the car. That's what Dan does.... Dan Basile is going to steal some cars. He is going to part [sic] them out. That's his M.O.

As previously noted, defense counsel has broad latitude in developing and promoting a particular trial strategy. In this particular case, that strategy involved a concession that Basile was a thief. The argument was consistent with that theory of defense. As such, it was not ineffective assistance of counsel for failing to engender sympathy in the jury during the guilt phase.

## XI.

Basile alleges the motion court erred when it adopted the prosecuting attorney's proposed findings of fact and conclusions of law verbatim. The record does not support this claim. However, even if the court modeled its findings and conclusions after the prosecuting attorney's suggestions, it is not error so long as the court thoughtfully and carefully considered the proposed findings and agreed with their content. *State v. White*, 873 S.W.2d 590, 600 (Mo. banc 1994). Nothing indicates that this did not occur in this case.

## XII.

Basile contends the trial court erred in overruling his motion to quash the indictment and to dismiss the case based upon the bare claim that Missouri's death penalty statutes are unconstitutional because the state can waive the death penalty when it chooses, and because the death penalty is unjustified as a means of achieving any legitimate government goal.

The Supreme Court of the United States has stated that prosecutorial discretion is not a basis for invalidating a state's death penalty. *Gregg*, 428 U.S. at 199, 96 S.Ct. at 2937. Therefore, the first aspect of the defendant's claim must be rejected. As to the second aspect, our courts have repeatedly held that our statutory death penalty scheme is not unconstitutional. *E.g.*, *Weaver*, 912 S.W.2d at 521–22. Third, among the goals of any penal system is deterrence and punishment. It is not inherently unreasonable to say that the death penalty advances those goals.

## XIII.

Basile attacks the giving of Instruction No. 4, the reasonable doubt instruction, claiming it violates his federal constitutional rights. This argument has been made and rejected on numerous occasions. *See, e.g., Copeland.*, 928 S.W.2d at 854; *Chambers*, 891 S.W.2d at 105. Extended discussion is not required.

## XIV.

Basile alleges that he was denied his constitutional rights to due process and free-

dom from cruel and unusual punishment by being denied to be present at his Rule 29.15 hearing. A Rule 29.15 motion is a civil proceeding and, as such, there is no right to be present under either the rule or the constitution. *Leisure v. State*, 828 S.W.2d 872, 878 (Mo. banc); *cert. denied*, 506 U.S. 923, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992); *Rule 29.15(h)*.

## CONCLUSION

For all the above reasons, the judgments are affirmed.

BENTON, PRICE, ROBERTSON, COVINGTON and WHITE, JJ., and HOWARD, Special Judge, concur.

LIMBAUGH, J., not sitting.