**STATE of Missouri, Respondent,**

v.

**Richard CLAY, Appellant.**

No. 78373.

Supreme Court of Missouri,
En Banc.

Sept. 8, 1998.

As Modified on Denial of Rehearing
Sept. 22, 1998.

122

Janet M. Thompson, Asst. Public Defender, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for Respondent.

BENTON, Chief Justice.

A jury convicted appellant Richard D. Clay of murder in the first degree and assessed the punishment as death, which the circuit court imposed. Appellant filed a motion for post-conviction relief under Rule 29.15, which the motion court overruled. In a consolidated appeal to this Court, appellant raises fourteen points of error. *Mo. Const. art. V, sec. 3.* This Court affirms.

## I. Facts

This Court reviews the facts in the light most favorable to the verdict. *State v. Shurn,* 866 S.W.2d 447, 455 (Mo. banc 1993), *cert. denied,* 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). Appellant's close friend Charles Sanders had an affair with Stacy Martindale. In February 1994, Martindale asked Sanders to help her kill her husband. She was unhappy in her marriage and also was the primary beneficiary of her husband's life insurance policy in the face amount of $100,000. During the spring of 1994, every time they met, Sanders and Martindale discussed various plans to kill her husband. Sanders confided in appellant, who told him that he would be "crazy" to help her with the plan.

Sanders borrowed a gun from another friend and kept it in his car. He bought ammunition and he and Martindale practiced firing the weapon. At that time appellant was unemployed and did not own a car. He often borrowed Sanders' car, twice took the gun out of the car without permission, and left the gun at a friend's house. He testified that he removed the gun so that he would not be caught with it while driving Sanders' car.

Martindale separated from her husband about April 28, 1994. Martindale offered Sanders $10,000 to kill her husband, and in April gave him a check for $4996.36 as a "down payment." A few weeks later, Sanders returned the check to Martindale, telling her that he could not execute the act they had been discussing. A carbon copy of the check was later found.

On May 19, 1994, Martindale met Sanders at Sanders' place of employment. Appellant waited inside to give them privacy. Outside, Martindale pressured Sanders to kill her husband. When Sanders refused, Martindale told him that she was going to ask appellant to do it. Then she immediately rode around alone with appellant.

Leaving Martindale, appellant went to a bar, to a restaurant, and then to a trailer. Appellant left the trailer carrying a black zippered bag. At 9:45 p.m., Martindale picked up the appellant, who still had the black bag, and drove him to her home.

In the meantime, her estranged husband had taken her two boys to a baseball game. He brought the boys back to her house after 10 p.m. Martindale invited him to spend the night. He went into her bedroom, sat down on a loveseat, and took off his shoes and socks. While he was sitting there, appellant came out of the bedroom closet where he was hiding and shot him four times. The victim bled to death. Martindale ran next door, awakening the neighbors with her screams. A neighbor came over to the house with her to find the two boys and discovered the victim bleeding from gunshot wounds, slumped over on the loveseat in the bedroom.

Moments later, a police officer saw a red Camaro with sparks flying beneath it. Because the driver continued to drive despite the sparks, the officer believed the driver was drunk. He pursued the Camaro, and when it accelerated, the officer turned on his red lights. The officer caught up to the Camaro on a gravel road where it was stopped, both doors opened, with the engine running. The officer requested backup and turned off the ignition of the Camaro. A shoeprint, later found to match the appellant's, was found outside the passenger door. When the other officers arrived, they began a search, sweeping the area from the vehicle to a swamp. An officer found a dry, live .380 caliber Remington–and–Peters cartridge that matched those found at the crime scene in dew-covered grass. The search lasted through the night. The next day several officers were sitting on a levee when one saw the appellant run into the woods. The appellant was carrying a black bag. As the officers closed in on him, he emptied the bag and threw it behind him. Officers continued the search through the swamp until one saw appellant's face as he surfaced to breathe. When the officers reached him, they arrested him. The police never found the murder weapon.

## II. Direct Appeal

### A. Trial Court Rulings

First, appellant alleges erroneous rulings by the trial court at many points throughout the proceedings; however, these

alleged errors are all either unpreserved, harmless beyond a reasonable doubt, or not error. During voir dire, the judge told the jury panel that this trial would not proceed like the trial "going on in California at the moment," apparently referring to the *O.J. Simpson* case. Appellant argues that the judge's comment created potential bias and caprice in the jury's deliberations. No objection was made at trial to this passing comment by the judge, and this Court will not review this unpreserved claim.

■ Further, appellant alleges that the trial court erred in sustaining the State's objections to several of defense counsel's questions to appellant. Specifically appellant argues that the trial court should have permitted him to explain details of a conversation that he had with Martindale in her car about drugs. Appellant did not make an offer of proof nor did his defense counsel preserve the issue for appeal in the motion for a new trial; thus, this Court cannot review that claim. *State v. Edwards*, 918 S.W.2d 841, 845 (Mo.App. W.D.1996); *State v. Johnson*, 858 S.W.2d 254, 256 (Mo.App. E.D.1993).

■ Appellant raises issues relating to erroneous evidentiary rulings by the trial court during both the guilt and penalty phases of the trial. However, these rulings were either harmless error or not error at all. During guilt-phase closing argument, the prosecutor referred to a change of venue and made an incorrect statement describing testimony. Defense counsel objected to these statements, but the trial court erroneously overruled those objections. The prosecutor withdrew the statement about the change of venue, and the defense asked for no further relief. The prosecutor's withdrawing the statement was sufficient relief. The State also told the jury that Officer McFerren, the officer who pursued the Camaro, saw only one person in the car. In fact, he had testified on cross that he did not know how many people were in the car. However, this comment by the State was made in passing, was not emphasized, and did not affect the outcome of the trial. Both of these errors are harmless beyond a reasonable doubt. *State*

*v. Dexter*, 954 S.W.2d 332, 340 n. 1 (Mo. banc 1997).

■ The other allegations of error by appellant lack merit. Appellant argues that the trial court erred in allowing hearsay testimony offered by the State, personalizing statements by the State, and improper evidence presented by the State during the penalty phase. Martindale, tried separately, did not testify at appellant's trial, but the State elicited testimony about certain statements Martindale made: that she concocted various scenarios to kill her husband and suggested them to Sanders, that she intended to talk to appellant before the killing occurred, that after the murder she saw her car pulling out of the driveway, and that after the murder she yelled "they shot him" and "they took my car" and "I can't believe they done it." Appellant argues that these statements are inadmissible hearsay. However, such statements are admissible under the co-conspirator exception to the hearsay rule.

■ Evidence is admissible under that exception if there is preliminary evidence of an agreement between the defendant and the declarant to engage in an unlawful act. *State v. Cornman*, 695 S.W.2d 443, 446 (Mo. banc 1985). Appellant argues that the State did not establish the existence of a conspiracy between appellant and Martindale by a preponderance of the evidence independently of her statements. *See Id.* (holding that before a purported co-conspirator's hearsay statements can be introduced against a defendant, there must be a showing, by evidence independent of the statement, that the conspiracy exists and that the defendant is part of that conspiracy). The State is not required to present conclusive evidence that a conspiracy existed. *State v. Pizzella*, 723 S.W.2d 384, 388 (Mo. banc 1987). Indeed, the appearance of "acting in concert" can provide sufficient circumstantial evidence of a conspiracy to invoke the co-conspirator exception to the hearsay rule. *State v. Williams*, 897 S.W.2d 631, 635 (Mo.App.1995); *State v. Peters*, 123 S.W.2d 34, 38 (Mo.1938).

■ Once the existence of a conspiracy is independently established, witnesses may

testify to statements of a co-conspirator that show the furtherance of the conspiracy. *State v. Isa,* 850 S.W.2d 876, 893 (Mo. banc 1993). Furthermore, "[t]he fact that declarations are made by a conspirator after the crime has been consummated does not necessarily make such declarations inadmissible." *State v. Hill,* 352 Mo. 895, 179 S.W.2d 712, 716 (1944); *State v. Smith,* 631 S.W.2d 353, 360 (Mo.App.1982). "If a conspiracy continues for a purpose such as concealing the crime or to prevent or defeat prosecution, the admissions of one coconspirator are admissible against the other, even if made after the completion of the crime which had been the objective of the conspiracy." *State v. Priesmeyer,* 327 Mo. 335, 37 S.W.2d 425, 427 (1931); *Smith,* 631 S.W.2d at 360.

The State argues that it proved that appellant was acting in concert with Martindale to murder her husband. Evidence showed that appellant was involved in a series of meetings with Martindale after Sanders withdrew from the conspiracy. Appellant met with Martindale on the night of the murder and went to the crime scene with her in her car. After the murder, appellant used Martindale's car to flee the scene. Appellant testified that he took the gun from Sanders' car on two other occasions. In view of this evidence of a conspiracy, the statements of one conspirator (Martindale) were admissible against the other conspirator (appellant).

■ During the guilt-phase closing arguments, the prosecutor told the jury that witnesses and prosecutors were from New Madrid. While this statement may have been inane, it did not personalize the case to the jury. The killing occurred in New Madrid, and the jury could have presumed that witnesses and prosecutors would be from that area.

■ Finally, appellant alleges three specific errors committed by the trial court that allowed the State to present improper evidence during the penalty phase. Appellant first argues that the trial court erred in allowing the State to present evidence of his alleged drug possession and weapon possession. The challenged evidence involved evidence that appellant was arrested for drug possession in 1993, and appellant testified

about that very incident during trial. At penalty phase, the State may generally introduce any evidence regarding the defendant's character. *State v. Six,* 805 S.W.2d 159, 166–67 (Mo. banc 1991), *cert. denied,* 502 U.S. 871, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991). Because of the importance of the death penalty decision, the sentencer is entitled to any evidence that assists that decision. *State v. Debler,* 856 S.W.2d 641, 656 (Mo. banc 1993). Appellant invokes *Debler,* where this Court held that extensive evidence of serious unconvicted crime is inadmissible where the State provides no timely notice that it intends to introduce the evidence. *Id.* In this case, the State disclosed the witnesses, appellant himself testified about that very incident of drug possession, and he does not allege any discovery violations. Adequate notice was provided, so no *Debler* violation occurred.

■ Appellant's second allegation is that the State's victim impact evidence was improper. Specifically, the victim's mother mentioned that the family lost another child who was crippled with cerebral palsy. Here, this was a passing comment that did not attribute the loss to appellant. This evidence was not so unduly prejudicial as to render the trial fundamentally unfair. *State v. Roberts,* 948 S.W.2d 577, 604 (Mo. banc 1997).

■ Third, appellant argues that the trial court erred in overruling defense counsel's objection to the admission of evidence of the victim's life insurance policy. However, evidence of a life insurance policy is not irrelevant where the State's theory was that the appellant committed the murder for hire.

■ The final errors appellant asserts concern the jury instructions in the guilt and penalty phases of the trial, including the judge's response to a jury request to clarify an instruction. Appellant argues that the jury was misinstructed on appellant's actions and the burden of proof in the guilt phase because the trial court erred in submitting State's Instruction 6, relating to accessorial liability. The court instructed the jury that it could find appellant guilty if it determined, among other things, that "with the purpose

of promoting or furthering the death of Randy Martindale the defendant aided or *encouraged* another person in causing the death of Randy Martindale and did so after deliberation ..." (emphasis added). Appellant argues that the word "encouraged" lowers the State's burden of proof because it allows a conviction based on passive presence, not active involvement. In effect, appellant argues, the instruction makes conduct illegal that is not prohibited by the General Assembly in sections 562.036 and 562.041 RSMo 1994. This Court again rejects this argument. *State v. Richardson*, 923 S.W.2d 301, 316–18 (Mo. banc 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 403, 136 L.Ed.2d 317 (1996); *State v. Copeland*, 928 S.W.2d 828, 849 (Mo. banc 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 981, 136 L.Ed.2d 864 (1997).

The additional claim that the reasonable doubt instruction, patterned after MAI–CR3d 302.04, violates appellant's constitutional rights is also once again rejected. *See State v. Taylor*, 944 S.W.2d 925, 937 (Mo. banc 1997), citing *State v. Kreutzer*, 928 S.W.2d 854, 872 (Mo. banc 1996), *cert. denied*, —— U.S.——, 117 S.Ct. 752, 136 L.Ed.2d 689 (1997). On a related issue, appellant complains that he was denied effective assistance of counsel because his trial counsel did not submit an alternative reasonable doubt instruction. In light of past decisions of this Court, no reasonable counsel would have offered a non-MAI instruction on reasonable doubt.

 Appellant asserts that the trial judge erred during the penalty phase by refusing a jury instruction submitted by defense counsel, giving two other faulty instructions, and failing to respond appropriately to a jury request for clarification of another instruction. The trial court refused to give a jury instruction offered by the defense, which added two non-statutory mitigating circumstances. The jury was instructed that:

As circumstances that may be in mitigation of punishment, you shall consider:

1. Whether the defendant was an accomplice in the murder of Randy Martindale and whether his participation was relatively minor.

2. Whether the defendant acted under substantial domination of another person.

3. The age of the defendant at the time of the offense.

Defense counsel offered this alternative instruction:

As circumstances that may be in mitigation of punishment, you shall consider:

1. Whether the defendant was an accomplice in the murder of Randy Martindale and whether his participation was relatively minor.

2. Whether the defendant acted under substantial domination of another person.

3. The age of the defendant at the time of the offense.

4. The defendant is a member of a family that loves him and would deeply feel his loss.

5. The defendant has been a model prisoner since his incarceration.

Appellant argues that the trial court erred in rejecting this instruction and he was prejudiced. This Court has rejected the claim that listing nonstatutory mitigating factors is constitutionally required. *State v. Chambers*, 891 S.W.2d 93, 109 (Mo. banc 1994); *State v. Parker*, 886 S.W.2d 908, 928 (Mo. banc 1994); *State v. Wacaser*, 794 S.W.2d 190, 195 (Mo. banc 1990). Therefore, the circuit court did not err. *See Buchanan v. Angelone*, —— U.S. ——, 118 S.Ct. 757, 139 L.Ed.2d 702 (1998).

 The appellant also argues that the trial court erred in giving Instructions 16 and 17, which both properly followed MAI–CR3d, on the grounds that they bifurcate the analysis of aggravating and mitigating factors. This Court has repeatedly rejected this claim as well; therefore, the circuit court did not err. *State v. Simmons*, 955 S.W.2d 729, 743 (Mo. banc 1997). Moreover, appellant may not now challenge the validity of instruction 17 because he submitted it at trial. *Parker*, 886 S.W.2d at 928–29.

 Appellant's last claim of error is that a jury request for clarification of an instruction in the penalty phase showed that they did not understand the law, and the judge's response was inadequate. During delibera-

tions, the jury asked whether it was required to impose death if it found at least one statutory aggravator. The juror who handed the note to the bailiff stated, "I want a yes or no answer." Instead, the trial judge directed the jury to review the instructions previously given. Less than an hour later, the jury returned its verdict, recommending death. Appellant asserts that the penalty phase instructions were confusing, demonstrated by the jury's lack of understanding that it never has to impose the death penalty. *Section 565.030.4(4) RSMo 1994.* He argues that, as a consequence, his death sentence is invalid.

When a jury expresses confusion about jury instructions, the trial judge should respond "with concrete accuracy." *Bollenbach v. United States,* 326 U.S. 607, 612–613, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946). Where jury instructions are correct, clear, and unambiguous, a trial court may respond to a jury's question by instructing them to look to the instructions for guidance. *State v. Johnston,* 957 S.W.2d 734, 752 (Mo. banc 1997). Among other references, penalty phase instruction No. 18, which parallels section 565.030.4(4), states:

> You are not compelled to fix death as the punishment even if you do not find the existence of facts and circumstances in mitigation of punishment sufficient to outweigh the facts and circumstances in aggravation of punishment. You must consider all the evidence in deciding whether to assess and declare the punishment at death. Whether that is to be your final decision rests with you.

The instructions say that the jury is never required to impose the death penalty; therefore, the trial judge did not err in instructing the jury to review the instructions.

### B. Prosecutorial Misconduct

Appellant alleges that he was denied due process because of various acts of intentional prosecutorial misconduct and, further, that he was denied the effective assistance of counsel when his trial attorney failed to object to that misconduct. This Court will not review those claims not preserved for appeal, and "[r]elief should be rarely granted on assertion of *plain error* to matters contained in closing argument, for trial strategy looms as an important consideration and such assertions are generally denied without explication." *State v. Wood,* 719 S.W.2d 756, 759 (Mo. banc 1986), quoted in *State v. Cobb,* 875 S.W.2d 533, 537 (Mo. banc 1994), *cert. denied,* 513 U.S. 896, 115 S.Ct. 250, 130 L.Ed.2d 172 (1994). Finally, although appellant asserts that the trial court should have declared a mistrial sua sponte, a court should take such action sua sponte only in exceptional circumstances. *State v. Drewel,* 835 S.W.2d 494, 498 (Mo.App. E.D.1992). No exceptional circumstances have been argued in this case.

One instance of alleged misconduct occurred during testimony in the guilt phase. Lee Boyd testified for the defense that he saw two people in the red Camaro. Don Fields, the passenger in Boyd's car, did not testify at trial. On cross-examination, the State asked Boyd: "You and Don didn't agree about how many people were in this vehicle; is that right?" Defense counsel objected on hearsay grounds, and the trial court sustained the objection. Appellant now claims prosecutorial misconduct, but this claim was not raised at trial and is not preserved for appeal.

Appellant contends that the State committed prosecutorial misconduct by arguing inconsistent theories at appellant's and Martindale's trials. At Martindale's trial, the State argued that she might have pulled the trigger. At appellant's trial, the State argued that he hid in Martindale's closet until he sprang out and shot the victim. Appellant did not raise this claim during trial or in his motion for new trial and so the claim is not preserved for appeal. *State v. Candela,* 929 S.W.2d 852, 860 (Mo.App. E.D. 1996).

Appellant next contends that he was denied the effective assistance of counsel because his trial counsel failed to object to the alleged misconduct. This Court will review claims of ineffective assistance of counsel for failure to object. *State v. Clemons,* 946 S.W.2d 206, 224 (Mo. banc 1997), *cert. denied,* — U.S. ——, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997); *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc 1995), *cert. denied,*

516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995).

■■■ In order to prevail on a claim of ineffective assistance, appellant must prove by a preponderance of the evidence that counsel was ineffective by failing to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances, and that appellant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). There are two, separate requirements embodied in this analysis. Counsel must have been ineffective and, in addition, the ineffectiveness must have prejudiced the appellant. If either of these requirements is not met, then a claim for ineffective assistance will fail. To prove prejudice, a defendant must show a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Shurn*, 866 S.W.2d 447, 468 (Mo. banc 1993), *cert. denied*, 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). In arguing ineffectiveness, appellant must overcome a strong presumption that counsel's performance was sound trial strategy. The standard for judging ineffective assistance for failure to object is clear:

> In many instances seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes. It is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good.

*State v. Tokar*, 918 S.W.2d 753, 768 (Mo. banc 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996). The movant must prove that a failure to object was not strategic and that the failure to object was prejudicial. *Id.* Counsel will not be deemed ineffective for failing to make non-meritorious objections. *Six*, 805 S.W.2d at 167.

Appellant raises numerous instances throughout the trial where he claims his trial counsel denied him the effective assistance of counsel by failing to object. We will review each instance in turn in order to determine whether counsel was indeed ineffective or appellant was prejudiced.

■■■ Appellant alleges that four times during voir dire, trial counsel should have objected when the prosecutor stated that: (1) the appellant was a "prominent member of the community down in New Madrid" and the case was "important" and "high profile," (2) the death penalty is not available in all first degree murder cases, (3) a verdict for life imprisonment had to be unanimous, and (4) first degree murder included "intentional" killings.

■■■ Nothing in the prosecutor's remarks was prejudicial to appellant. Defense counsel testified that the jurors would have presumed that the case was "high profile," or received a lot of publicity, because a change of venue had been granted. Defense counsel also testified at the Rule 29.15 hearing that he wanted the jury to think that the case was "important." The State's remarks that the death penalty is not available in all first degree murder cases were made in the context of explaining that the State had to prove the existence of aggravating circumstances beyond a reasonable doubt. Trial counsel reasonably did not object to this discussion of the burden of proof, and appellant was not harmed by the comments. Nor was appellant harmed by the prosecution's comments that the verdict had to be unanimous. *See section 565.030.4 RSMo 1994.* Last, appellant takes the prosecutor's remark about an "intentional killing" out of context. The prosecutor was explaining the elements of the crime of first degree murder. The prosecutor stated: "First degree murder is knowingly taking someone else's life after deliberation. And deliberation is defined as cool reflection for any length of time no matter how brief that length of time is. But those are the general elements of first degree murder. A knowing intentional killing." The appellant was not prejudiced by this accurate statement of the law.

Appellant next alleges that trial counsel should have objected to the following statements by the prosecutor during guilt-phase opening arguments: (1) that the State's witness, Officer Kenley, was "very experienced,"

and an "expert tracker," (2) that the gun had been stolen, when no testimony was adduced that the gun was stolen, (3) that the appellant had said he would "get" the victim, when testimony adduced that he said he would "whop" the victim, (4) that the victim said he had "something to do" when the testimony adduced was that the victim "had to go and pick something up," and (5) that the victim had "drowned" when the expert witness later testified that he "bled to death."

■ The State adduced Officer Kenley's testimony that he had ten years' experience as a trooper with the state highway patrol specifically in New Madrid County and that he was very familiar with the roads in that area. He also described his tracking experience, tracking with dogs, hunting, and training over several years. Regarding the stolen gun, the prosecutor remarked that a witness, Darrell Jones, would testify that Sanders' gun was stolen. In the end, however, Jones did not testify. "A prosecutor may refer to evidence that the state intends to introduce, including evidence that is arguably admissible, even if it is later excluded." *Copeland,* 928 S.W.2d at 841; *Debler,* 856 S.W.2d at 656. If trial counsel had objected to the prosecutor's statements during the guilt-phase opening statement, the objections would have been meritless. Counsel will not be deemed ineffective for failure to make meritless objections. *Roberts,* 948 S.W.2d at 601.

■ The prosecutor also stated at opening that, "Richard Chadd will testify that some time prior to May 19, 1994, and he has difficulty with his times [sic], that Rick Clay told him he was going to get Randy Martindale." Chadd testified that "he said something about whopping him. You know, going to whop him one time." The prosecutor then asked "Did he ever tell you he was going to get him?" Chadd replied, "No, sir. He just said, said he was going to whop him one of these days." The difference is semantic. To "whop" means to "beat" or "strike." *Websters Third New International Dictionary* 2612 (1976). To "get," in the context of harming someone, means "to strike with force: hit." *Id.* at 953. The appellant is not prejudiced by the prosecutor's use of this

synonym. Likewise, the difference between having "something to do," and "something to pick up" is trivial and could not have prejudiced the appellant.

■ The prosecutor stated that an expert would testify that due to the gunshot wounds, "essentially Randy Martindale drowned." The expert actually testified that the cause of death was "the blood loss caused by the three gunshot wounds in the neck," in other words, he "bled to death." Appellant has not shown that it was not reasonable trial strategy not to object to this statement. Trial counsel reasonably could have decided not to object in order not to highlight this relatively gruesome statement for the jury. *Tokar,* 918 S.W.2d at 768.

In sum, appellant was not prejudiced by any of these statements. Furthermore, trial counsel reasonably could have decided that to object to all of these statements would have done more harm than good by irritating the jury with interruptions and highlighting the particular statements.

■ Appellant's next assertion of ineffective assistance is based on defense counsel's failure to object to actions by the State during testimony in the guilt phase. First, appellant argues that the prosecutors elicited inadmissible hearsay statements. Officer Greg Kenley testified that when he arrived at the parked red Camaro, another officer told him "that one of the New Madrid city officers had a pursuit, the guy had jumped out of his car and they were looking for him in that area." Other witnesses said that someone got out of the car and fled from an officer. *State v. Brown,* 949 S.W.2d 639, 642 (Mo.App. E.D.1997). Appellant himself testified that "When the car come to a stop, I bailed out, was running." Appellant was not prejudiced by this evidence.

Appellant states that the state elicited testimony that went to the ultimate legal issue of whether the victim was "murdered." To the contrary, this was a preliminary side reference that did not merit an objection.

■ Appellant contends that the State improperly bolstered the credibility of some of their witnesses and improperly attempted

to impeach another one of its witnesses. The State merely reviewed the credentials of the witnesses. Trial counsel was not ineffective for failing to object, and appellant was not prejudiced by this evidence of the witnesses' credentials. One of the State's witnesses, Tom Masterson, stated on the stand that he could not remember who he saw at the bar the night of the murder. The State then read from his deposition questions and answers, asking if he remembered them. Appellant was not prejudiced because Masterson stated nothing that was not already before the jury. Masterson stated that he saw the appellant, Becky, Candy Richmond, Sanders, Niki Bouge, and Mike Frederick at the bar. Niki Bouge testified that she was at the bar with Sanders, and appellant testified that he was there that evening as well. This testimony is not damaging to the appellant.

■ Appellant also argues that the state improperly failed to establish the expertise of witnesses who were called to give an expert opinion. Trial counsel was not ineffective for failing to raise this objection because the state adduced that the witnesses had sufficient knowledge and expertise to testify and aid the trier of fact. *State v. Futo*, 932 S.W.2d 808, 820 (Mo.App. E.D.1996).

■ Appellant claims that trial counsel was also ineffective for failing to object to numerous, specific statements by the prosecution during guilt-phase closing arguments. The prosecutor mentioned that appellant had access to depositions and prior testimony of witnesses and that he had to "come up with an explanation." Appellant complains that the prosecutor denigrated appellant's testimony and his suggestion that police had planted evidence. "A prosecuting attorney may comment on the evidence and the credibility of witness and, in the process, may belittle and point to the improbability and untruthfulness of specific testimony." *State v. Weaver*, 912 S.W.2d 499, 513 (Mo. banc 1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 153, 136 L.Ed.2d 98 (1996). Counsel was not ineffective for failing to make a meritless objection to these statements.

■ The prosecutor said "not only is this his day in court, this is State of Missouri versus Rick Clay, and this is our only day in court." Appellant apparently contends that this was an improper statement about appellant's exercise of his procedural and substantive due process rights. The prosecution was summing up and asking the jury to consider carefully the State's evidence and to return with a guilty verdict. Appellant was not prejudiced by this argument.

■ The prosecutor stated that the victim's killer dropped the bullet. Appellant argues that this was a misstatement of the facts because no footprints were found near the bullet. On the contrary, this statement was based on a reasonable inference from the evidence that police officers found a dry bullet in wet grass as they followed appellant's trail from the Camaro to the levee. A state's witness testified that this bullet "had been loaded into the same magazine as the fired cartridge casings recovered from the crime scene."

The prosecutor stated that Officer McFerren left no footprints by the Camaro because he "gingerly approached" the car. The prosecutor explained that he "backed, he went up, reached in and turned off the vehicle, didn't touch a thing." This matches the testimony by McFerren, that he was cautious in approaching the vehicle to "make sure there wasn't anyone in the back seat." The prosecutor did not exaggerate this testimony by his description. The evidence supported the statement; thus, the appellant was not prejudiced by the statement.

■ The prosecutor said that the State did not get to choose its own witnesses. "That was in that deck of cards that was dealt to us." This, appellant argues, personalized the case. This was not a personal comment, but rather an explanation that the State was not free to pick its witnesses, so trial counsel was not ineffective for failing to object. *See Rowe v. Farmers Ins. Co., Inc.*, 699 S.W.2d 423, 424 (Mo. banc 1985).

■ Appellant asserts that trial counsel was ineffective for failing to object to several improper arguments by the State in its penalty-phase opening argument. Appel-

lant claims that the prosecution personalized the case by saying "appreciate verdict" and "verdict spoke out against senseless violence." An argument is personalized only if it suggests a personal danger to the jurors or their families if the defendant were to be acquitted. *State v. Phillips*, 940 S.W.2d 512, 519 (Mo. banc 1997). The prosecutor's remarks were a reference to the verdict itself, and not to any potential danger to the jurors. There was no ineffective assistance in failing to object.

Appellant also contends that the prosecution misstated the law by referring to aggravating circumstances as "special circumstances." The prosecution used the term "special circumstances" in the context of explaining aggravating circumstances. The appellant was not prejudiced when trial counsel did not object.

The State argued that the killing was depraved. Appellant asserts that no evidence supported this aggravator. In fact, there was sufficient medical evidence that the first shots were disabling, in order to submit this aggravating circumstance to the jury, and trial counsel was not ineffective for failing to object.

The prosecution referred to the facts of appellant's prior arrest, about which the appellant himself testified during the guilt phase. As a general proposition the facts and circumstances surrounding prior convictions, not just the existence of those convictions, may be introduced during the penalty phase, and the trial court has discretion to control the evidence of these circumstances. *State v. Whitfield*, 837 S.W.2d 503, 511–12 (Mo. banc 1992); *Debler*, 856 S.W.2d at 657. Consequently, counsel was not ineffective for failing to make this meritless objection.

Appellant's final assertions of ineffective assistance relate to his attorney's failure to object to alleged prosecutorial misconduct in the penalty-phase closing arguments. To successfully raise an ineffectiveness claim based on failure to object to a penalty-phase closing argument, the appellant must show that counsel failed to exercise the degree of skill, care, and diligence of a reasonably competent attorney and that there is a reasonable probability that, but for the counsel's errors, the result would have been different. *Tokar*, 918 S.W.2d at 768. To determine whether appellant was prejudiced by counsel's failure to object, this Court applies the following factors: "1) measure what type of prejudice arose from the prosecutor's argument; 2) examine what the defense counsel did in his argument to minimize the prejudice; 3) review the jury instructions to see if the jury was properly instructed in the case; and 4) consider all of the aggravating and mitigating information to determine whether there is a reasonable probability that the outcome of the sentencing phase would have been different." *Tokar*, 918 S.W.2d at 768, citing *Newlon v. Armontrout*, 885 F.2d 1328, 1337 n. 10 (8th Cir.1989), *cert. denied*, 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990).

The appellant asserts that the prosecutors repeatedly misstated the law, injected irrelevant considerations, and inserted their personal beliefs into the case. A prosecutor's statement of personal opinion or belief not drawn from the evidence is improper. *State v. Storey*, 901 S.W.2d 886, 901 (Mo. banc 1995); *State v. Jackson*, 499 S.W.2d 467, 471 (Mo.1973). However, none of the claimed erroneous statements would have affected the outcome of the penalty phase, and certainly trial counsel's failure to object did not affect the outcome.

First, appellant argues that the State improperly personalized the case by saying that the victim could have been getting dressed when he was shot. The victim was found with his shoes off, and appellant argues that the jury reasonably could have inferred that he was getting undressed. Likewise, the prosecutor's statement is also a reasonable inference from the. evidence. Whichever inference the jury actually drew from the evidence had little if anything to do with its assessment of the punishment or its determination of guilt; therefore, counsel's failure to object was not outcome-determinative.

Second, although the prosecutor said that he found it difficult to sign the informa-

tion in the case, this statement, and counsel's failure to object to it, could not have changed the outcome of the penalty phase. It suggested that the prosecutor, as well as the jury, had to consider the case carefully. Trial counsel was not ineffective for failing to object to this statement.

Appellant's third contention is that the prosecutor misstated the law by arguing that if a crime was "horrible," the depravity of mind aggravator was proved. Appellant mischaracterizes the State's argument because the prosecutor did not say that "horrible crime" was a definition of the depravity of mind aggravator, but rather was describing the facts of the crime at that point in the trial.

 Fourth, appellant argues that trial counsel was ineffective for failing to object when the prosecutor told the jury that it must sentence appellant to death in order to restore peace to New Madrid. The prosecutor stated:

We have a peaceful community in New Madrid. A community ... peaceful no more. Decisions such as this are hard. They are difficult. But if we are to restore and have a peaceful law abiding society, then there are decisions we must make. Do not let the civility and quietness of a court proceeding overshadow the real brutality and horribleness and vileness of this crime.

The prosecutor then asked the jury to return a verdict of death. This argument was not improper because a prosecutor may call upon the jurors' common experience in arguments concerning the prevalence of crime in the community and the personal safety of its inhabitants. *State v. Clemmons,* 753 S.W.2d 901, 909 (Mo. banc 1988). The prosecutor may refer to the need for strong law enforcement as a deterrent to crime and infer the effect of the jury's failure to perform its duty and uphold the law. *State v. Gilmore,* 681 S.W.2d 934, 944 (Mo. banc 1984).

## C. Sufficiency of Evidence

 Appellant argues that the evidence presented was insufficient as a matter of law to convict him of the murder. The

standard for reviewing claims challenging the sufficiency of evidence is well-established:

On review, the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary. In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.

*State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989) (citations omitted). In considering whether the evidence is sufficient to support the verdict, this Court considers whether a reasonable juror could find each of the elements beyond a reasonable doubt. *State v. Grim,* 854 S.W.2d 403, 411 (Mo. banc 1993). The State had the burden of proving that appellant 1) knowingly 2) caused the victim's death 3) after deliberation. *State v. O'Brien,* 857 S.W.2d 212, 217 (Mo. banc 1993).

Deliberation is "cool reflection upon the matter for any length of time, no matter how brief." *Section 565.002.3 RSMo 1994.* The victim was shot four times, and deliberation may be inferred from multiple wounds. *State v. Johnston,* 957 S.W.2d 734, 748 (Mo. banc 1997); *State v. Roberts,* 709 S.W.2d 857, 863 (Mo. banc 1986), *cert. denied,* 479 U.S. 946, 107 S.Ct. 427, 93 L.Ed.2d 378 (1986).

 To be criminally liable as an accomplice, the defendant must personally deliberate but need not personally perform each act constituting the elements of the crime, and any evidence that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction. *State v. Jeffries,* 858 S.W.2d 821, 824 (Mo. App.1993). In this case, the State presented evidence that Martindale met with appellant repeatedly. Appellant testified that he was at the Martindale residence immediately before the time of the murder. The State also presented evidence that appellant left the Martindale residence in Martindale's car and fled from the police. Moreover, the officers found only one set of shoeprints leaving the car, which were identified as made by the appellant's shoes. During the subsequent

search, an officer found a dry .380 cartridge in dew-covered grass, and an expert testified at trial that this cartridge matched the expended cartridges at the crime scene. The jury could have reasonably inferred that appellant dropped the cartridge. The appellant's presence at the crime scene and flight therefrom are evidence of consciousness of guilt. *State v. Rodden*, 728 S.W.2d 212, 219 (Mo. banc 1987).

The defense presented a theory that appellant went to the Martindale house with Sanders that night to sell drugs and that Sanders had not backed out of the conspiracy. To that effect, appellant testified that he was with his friend Sanders at the time the victim was shot. However, this testimony was contradicted by the testimony of Sanders and two other witnesses. They all testified that Sanders was not with appellant at the time of the murder, but with friends at a bar. "Exculpatory statements, when proven false, evidence a consciousness of guilt and therefore bear directly on the issue of guilt or innocence." *Id.* at 219. Therefore, based on this evidence, the jury could reasonably conclude that appellant killed the victim.

Finally, appellant argues that on appeal, a court applies the equally valid inference rule that, "where two equally valid inferences can be drawn from the same evidence, the evidence does not establish guilt beyond a reasonable doubt." On the contrary, this Court abolished the "two inference" rule in *Grim. State v. Chaney*, 967 S.W.2d 47, 54 (Mo. banc 1998).

### III. Rule 29.15 Appeal

■ In his appeal from the denial of his Rule 29.15 motion for post-conviction relief, appellant claims that several reversible errors were committed by the motion court. Appellant also raised many of the same claims of ineffective assistance of counsel that are presented in his direct appeal, and he challenges the motion court's denial of those claims as well. This Court reviews the denial of post-conviction relief to determine whether the motion court's findings of fact and conclusions of law are "clearly erroneous." *Rule 29.15(j); Tokar*, 918 S.W.2d at 761. Findings and conclusions are clearly

erroneous if, after a review of the entire record, the appellate court is left with the definite impression that a mistake has been made. *Shurn*, 866 S.W.2d at 468–69.

■ Appellant first argues that the motion court made erroneous evidentiary rulings, and thus erred in finding that appellant presented insufficient evidence to support his claims. Appellant claims that the motion court erred in denying his motion for the court to either dispense with witness fees or order payment of fees. Appellant believes that due to a conflict of interest, he was denied funds to pay witness fees to accompany subpoenas. Moreover he asserts that subpoenas for Rule 29.15 actions are invalid unless accompanied by the payment of witness fees. *Rule 57.09(c)*. However, even if fees were required to accompany the subpoena, appellant must show who would have testified, what they would have testified to, and that they would have provided him a viable defense.

Appellant's counsel first requested that the Missouri State Public Defender System pay the fees. He made this request to Dan Gralike, the Deputy Director of the system, who had previously represented Sanders, a witness for the State in appellant's trial. Gralike denied appellant's counsel's request for payment of the fees, but then withdrew that order because of the appearance of a conflict of interest. Appellant's counsel then requested witness fees from Gralike's supervisor, J. Marty Robinson, the Director of the system, and he also denied the request. Appellant does not claim that Robinson had any conflict of interest that would influence his decision to deny witness fees. In addition, Appellant's post-conviction counsel moved to withdraw because a conflict of interest prevented him from obtaining witness fees. There is no constitutional right to counsel in a post-conviction proceeding. *State v. Hunter*, 840 S.W.2d 850, 871 (Mo. banc 1992), *cert. denied*, 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 732 (1993). Therefore, the motion court did not clearly err in its denial of witness fees.

■ In his post-conviction motion, appellant raised the claim that his jury was not

drawn from a fair cross-section of the community. The motion court denied appellant's request to order that venire lists for Callaway County be made available to an expert witness who might have testified that the jury selection procedures at trial were constitutionally inadequate. Appellant claims that the motion court clearly erred in denying this request. He does not allege that any particular cognizable group was underrepresented, but merely names an expert who could testify that the jury selection methods were inadequate if he found such proof in the venire lists. This point is denied.

■ Appellant claims that the motion court erred in precluding appellant from presenting certain evidence of Sanders' drug use. At the post-conviction hearing, appellant attempted to establish that Mark Brown Green would have testified at the trial that he had seen Sanders use drugs, but the State objected and the motion court sustained the objection. The motion court then denied appellant's motion to make an offer of proof. The motion court did not clearly err in sustaining the State's objection. The purpose of the question was to show that Brown's testimony would have corroborated the appellant's testimony that he went to the Martindale house to sell drugs, not to kill the victim. The answer to the question whether Sanders had used drugs would have been inadmissible as evidence of a witness' prior bad acts or of his propensity to use drugs. *State v. Foster*, 854 S.W.2d 1, 4 (Mo.App. W.D.1993) (evidence of witness' past bad acts inadmissible for impeachment because not related to truth or veracity of witness).

■ Appellant claims that the motion court erred in denying his request, in violation of his Sixth Amendment right to confront witnesses against him, for an in camera review of the disciplinary records of Officer McFerren, who testified at trial for the State. He sought the files to ascertain whether Officer McFerren had ever lied about cases in the past. He asks this Court to reverse and remand for a new motion hearing or for a new trial. However, "[t]he defendant is not entitled to information on the mere possibility that it might be helpful, but must make 'some plausible showing' how the information would have been material and favorable." *Parker*, 886 S.W.2d at 916–917. Because appellant did not allege any particular facts that might have been material, the motion court did not err in denying his request for in camera review.

■ Appellant claims that the motion court clearly erred in its assessment of potential prosecutorial misconduct. At trial, the State stated that Sanders could receive ten years in prison. After appellant's trial Sanders was sentenced to five years' probation in exchange for testifying against appellant. Appellant argued in his Rule 29.15 motion that the State committed prosecutorial misconduct in violation of his due process rights by failing to reveal the possibility of probation for Sanders, and therefore, a new trial should be granted. Appellant argues that he was prejudiced because had the jury known that Sanders would get probation for his testimony, the jury would have assessed his credibility negatively based on a motive to give testimony favorable to the State. However, the motion court found that the plea agreement was not made until long after appellant's trial. The State does not commit prosecutorial misconduct for failing to reveal information that did not exist at the time. The motion court did not find prejudice and did not clearly err.

In addition to appellant's claims that the motion court made several erroneous evidentiary rulings and other findings, appellant further contends that the motion court erred in denying post-conviction relief for ineffective assistance of trial counsel. The ineffective assistance claims made up the bulk of appellant's argument in his Rule 29.15 motion and in his appeal from the motion court's denial of that motion. Many of these allegations have already been addressed in the discussion of appellant's direct appeal. Of the ineffective assistance issues not already addressed, appellant waived some of the issues and the other issues raised are insufficient to establish ineffective assistance.

■ In actions under Rule 29.15, any allegations or issues that are not raised in the Rule 29.15 motion are waived on appeal. *State v. Wheat*, 775 S.W.2d 155, 157 (Mo.

banc 1989). Several of the arguments that appellant raises in his appeal from the motion court's finding of no ineffective assistance were not raised in his Rule 29.15 motion and thus are waived. With respect to the ineffective assistance claims considered by the motion court, the motion court found: "None of the motions and objections that movant claims should have been raised appears to be so prejudicial, or so lacking in an underlying trial strategy, to merit a finding of ineffective assistance of counsel." As noted in Part II.B, the test for ineffective assistance is that counsel must have failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances and appellant was prejudiced as a result. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Sanders*, 738 S.W.2d at 857. Trial strategy is not a ground for claiming ineffective assistance of counsel. *Shurn*, 866 S.W.2d at 468.

The motion court found that trial counsel was not ineffective for failing to challenge the jury selection method. As previously discussed, because appellant does not allege that any cognizable group was underrepresented, the motion court did not clearly err in denying this claim.

 Appellant claims that trial counsel was ineffective for failing to object to the trial court's mention of the O.J. Simpson trial and for failing to make an offer of proof when the trial court sustained an objection to appellant's testimony. The trial court made the reference in passing to assure jurors that Clay's trial would not last so long, and it is reasonable trial strategy not to object to such a statement to avoid highlighting it. The trial court sustained a State objection to appellant's testimony about a conversation with Stacy Martindale concerning drugs. However, defense counsel did elicit from appellant that the conversation was not about murder, as the State alleged, and at a later point in Clay's testimony defense counsel elicited several times that appellant's asserted purpose for being at the murder scene was to sell Stacy drugs. Appellant was not prejudiced by defense counsel's failure to make an offer of proof. The motion court did not clearly err in denying these claims.

 Appellant also claims that counsel was ineffective for failing to correct a venireperson's misunderstanding about the relative costs of the death penalty and life without parole. The venireperson stated that she would hesitate to sentence someone to life without parole because of the expense. The motion court found that counsel was not ineffective and sustained the State's objection to expert testimony on the relative costs of the sentences. The motion court did not clearly err because "constitutional imposition of the death penalty does not require, or indeed allow, jury consideration of the costs and benefits of the death penalty." *Brown*, 902 S.W.2d at 295.

Appellant next argues that the motion court should not have sustained the State's objection to the admission of a social psychologist's study about whether jurors understand penalty phase instructions because it was ineffective assistance by trial counsel for failing to offer the study at trial. The study was available pretrial, but it was proper for the trial court to submit the penalty-phase instructions. Furthermore, "[t]he constitutionality of the MAI instructions defeats [appellant's] claim that counsel's performance was deficient and that he was prejudiced." *State v. Kinder*, 942 S.W.2d 313, 339 (Mo. banc 1996), *cert. denied*, — U.S. —, 118 S.Ct. 149, 139 L.Ed.2d 95 (1997). Therefore, the motion court did not clearly err in its determination of no ineffective assistance on this count.

Appellant's main argument is that counsel was ineffective for failing to investigate and prepare evidence to corroborate the defense theory that Sanders, not the appellant, was Martindale's accomplice in murdering her husband. To this end, appellant asserts that the defense counsel should have corroborated the appellant's testimony that he was at the crime scene on the night of the murder with Sanders to sell drugs, that Sanders did not withdraw from the conspiracy, and that there were two people in Martindale's red Camaro, which drove away from the crime scene.

Appellant claimed that trial counsel was ineffective for failing to call several witnesses to testify to Sanders' and Martindale's drug

use. However, as noted earlier, this testimony about witnesses' prior drug use would have been inadmissible and therefore appellant's trial counsel was not ineffective for failing to call these witnesses.

 Appellant contends that counsel was ineffective for failing to adduce evidence that the appellant was buying and selling drugs on the night of the murder. Specifically, he contends that defense counsel should have called Nina Flippo, a penalty-phase witness, during the guilt phase because she would have testified that appellant was talking to Ed Clair, from whom appellant claimed to buy drugs. Appellant also complains about counsel's failure to elicit from Kenny Hayden that he believed that appellant was going to get "crank." However, evidence that the appellant was selling drugs or planned to sell drugs on the night of the murder is not a viable defense. The fact that appellant sold drugs at the crime scene at the time of the murder is not inconsistent with evidence that he also committed the murder. Neither witness would have provided him with a viable defense; therefore, his counsel was not ineffective for failing to present this evidence. Furthermore, appellant waived any claim that trial counsel's failure to call Nina Flippo during the guilt phase prejudiced appellant because he failed to raise it in his Rule 29.15 motion. *State v. Twenter*, 818 S.W.2d 628, 641 (Mo. banc 1991).

Appellant believes that trial counsel was ineffective because counsel inadequately investigated witnesses whose testimony might demonstrate that appellant was not alone in the Camaro on the night the victim was shot, and that Sanders, not the appellant, was Martindale's co-conspirator. Appellant argues that the defense counsel should have interviewed several witnesses whose testimony would have testified that he was not alone in the Camaro that sped away from the crime scene. Appellant also argues that trial counsel should have called witnesses and impeached Sanders' testimony in order to buttress the defense claim that Sanders did not withdraw from the conspiracy.

 Counsel's decision not to call a witness is presumed to be a matter of trial strategy and will not support a claim of ineffective assistance of counsel unless the appellant clearly establishes otherwise. *Johnston*, 957 S.W.2d at 753; *Sanders*, 738 S.W.2d at 858; *State v. Patterson*, 826 S.W.2d 38, 41 (Mo.App.1992). The reason behind this presumption is:

> In the real world containing real limitations of time and human resources, criminal defense counsel is given a heavy measure of deference in deciding what witnesses and evidence are worthy of pursuit.

*Twenter*, 818 S.W.2d at 635. Therefore, the standard is:

> To establish a claim of ineffective assistance of counsel for failing to locate and interview witnesses, the defendant must show not only that the witnesses could have been located through reasonable investigation, but it must also be shown that the witnesses would testify if called, and that the testimony would have provided a viable defense.

*Id.* at 640.

 Don Fields was a passenger in a car that passed the Camaro. He stated to police equivocally that he believed that he had seen two people in the Camaro. Defense counsel never contacted Fields, but did call Lee Boyd, who testified with certainty that he did see two people inside the car. Fields' testimony would have been merely cumulative because this evidence could not have proved anything that was not already before the jury by way of Lee Boyd's testimony. In fact, Field's testimony might well have detracted from Boyd's testimony. The decision not to contact Fields, who was not sure how many people were in the car, was a matter of strategy. The defense counsel also did not investigate several witnesses who were in a car near the Camaro and could have testified that they saw both doors open at about the same time. This testimony, according to the appellant, would have undercut the State's theory that appellant fled from the crime scene alone. However, that decision is a matter of trial strategy.

In a connected matter, appellant contends that his trial counsel was ineffective because

counsel failed to raise a related claim of prosecutorial misconduct. As discussed in Part II.B, the State falsely stated during cross-examination of Lee Boyd that the passenger in Boyd's car disagreed with Boyd on the number of people in the Camaro. Trial counsel objected to the question, and the objection was sustained. Appellant cannot show that trial counsel acted unreasonably on this matter.

If appellant's trial counsel had called Tammy Chadd, who testified at the post-conviction hearing, at trial, she would have testified that Sanders called her to remind her that she had seen him at a bar, J.D.'s, the night of the murder. Chadd also would have testified that on Thursday, May 19, the evening of the murder, she told Sanders that she did not have enough money to leave town. He replied that he only had fifty dollars, but that he would have more money on Friday afternoon or Saturday morning. Appellant argues that this testimony would have bolstered the defense theory that Sanders had not withdrawn from the conspiracy, and that he was expecting a large payment at the time of the murder. Appellant has not shown that there is a reasonable probability that the result of the proceeding would have been different if she had testified. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Chadd's purported statement does not necessarily indicate that Sanders would receive a large sum of money. Moreover, impeaching Sanders to indicate that Sanders had a monetary motive to kill the victim would not provide a viable defense for appellant. As Sanders admitted, he backed out of the conspiracy the day of the murder, just before Martindale asked appellant to kill her husband.

Appellant argues that defense counsel was ineffective for failing to impeach Sanders' testimony in other ways as well. Appellant argues that defense counsel should have adduced Sanders' deposition testimony that Sanders merely assumed that Martindale decided to talk to appellant after Sanders backed out of the plot to kill Martindale. At trial Sanders testified that Martindale told him she would talk to appellant. Appellant contends that counsel was ineffective for failure to call or adduce testimony from Nicki Bouge, who could have testified that Sanders asked her to be his alibi. However, appellant waived these claims by failing to raise them in his Rule 29.15 motion. Appellant argues that Robert Lay would have testified that Sanders told him that he wanted to hurt or kill the victim. Lay's testimony, appellant contends, would have contradicted Sanders' statement that he did not really want to kill the victim. The claims about Lay's testimony in this appeal are different from those raised in the Rule 29.15 motion, and thus are waived.

The motion court found trial counsel adequately prepared and fully participated in the defense of defendant. That finding is not clearly erroneous. The issues of investigating and calling witnesses that might possibly support a defense theory properly fall within trial strategy and cannot be said to have been objectively unreasonable. In addition, the defense theory at trial was that Martindale killed her husband, and that Sanders and appellant were in the car together. At trial, the appellant testified that he was with Sanders all night. Showing that Sanders was involved in the murder would have contradicted appellant's own testimony.

Finally, appellant argues that counsel was ineffective for not investigating and preparing evidence in mitigation of punishment regarding school, work, friends, and factors that predisposed the appellant to drug and alcohol abuse. Specifically, appellant contends that trial counsel was ineffective for failing to investigate and present evidence that appellant's father was diagnosed with personality disorders associated with alcohol abuse. This evidence would have led to other evidence of how appellant's father's problems contributed to his own. Evidence that appellant was predisposed to abuse drugs, he argues, would have mitigated the State's evidence that he made that choice. Appellant has not shown how he could have been prejudiced by the absence of this testimony, especially given that the defense theory emphasized throughout both the guilt and the penalty phase that appellant used and sold drugs. This evidence was presented to corroborate the theory that ap-

pellant went to the crime scene that night to sell drugs and not to kill the victim.

■ Appellant also claims that trial counsel was ineffective for failing to call additional friends, teachers, and employers as witnesses. Trial counsel called eleven penalty-phase witnesses to discuss appellant's background, including appellant's mother, his sisters, his stepfather, former high school classmate, workers from the county jail, and several close friends. They all testified to appellant's kind acts toward them and others, the hardships he had dealt with concerning drugs and his biological father's problems, his work, school, and military experience. "Defense counsel is under no obligation to present the defendant's background in mitigation in a death penalty case," *Clemons*, 946 S.W.2d at 223, and defense counsel certainly need not present cumulative evidence of his background.

Appellant argues that additional witnesses would have testified that he was "an athlete," "an average student," "extremely popular in school" and "well liked by his friends," "always polite and courteous." This evidence would have been cumulative. Appellant has not shown any prejudice from trial counsel's decision not to call these additional penalty-phase witnesses.

## IV. Section 565.035 Review

In all cases in which the death penalty is imposed, this Court is required by statute to review the imposition of that sentence. *See section 565.035 RSMo 1994.* Under section 565.035, there are three factors that the Court must assess:

(1) Whether the sentence of death was imposed under the influence of passion prejudice, or any other arbitrary factor;

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance . . . ;

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence and the defendant.

*565.035.3 RSMo 1994.* The Court's evaluation of these factors does not warrant that the sentence be set aside.

### A. Passion, Prejudice or Arbitrariness

■ As previously discussed with regard to each allegation of error, no error committed by trial counsel, the prosecution, or the trial court resulted in prejudice to appellant. Furthermore, as mentioned in Part II.A, the jury received correct instructions in both the guilt and penalty phases of the trial and was aware of the law governing the appropriate imposition of the death penalty. Therefore, the sentence was not influenced by passion, prejudice or arbitrariness.

### B. Evidence of Statutory Aggravators

■ Appellant contends that the State did not prove the aggravating circumstances beyond a reasonable doubt. Specifically appellant argues that as to the first statutory aggravator, the State did not present sufficient evidence that he acted at Martindale's direction. "Where a defendant challenges the sufficiency of evidence to support an aggravating circumstance, the test is whether a reasonable juror could reasonably find from the evidence that the proposition advanced is true beyond a reasonable doubt." *Brown,* 902 S.W.2d at 294. This point has already been resolved against appellant.

■ Appellant also contends that the State failed to prove beyond a reasonable doubt that the victim was rendered helpless. This Court need not address this point because the State did prove the first aggravator, that the appellant killed the victim at Martindale's direction. The jury need find only one statutory aggravating circumstance in order to recommend imposition of the death penalty. *Tokar,* 918 S.W.2d at 772; *Weaver,* 912 S.W.2d at 522. Appellant finally asserts that the depravity of mind aggravator is unconstitutionally vague. This Court has rejected that argument repeatedly. *Tokar,* 918 S.W.2d at 772; *State v. Mease,* 842 S.W.2d 98, 113 (Mo. banc 1992), *cert. denied,* 508 U.S. 918, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993).

## C. Proportionality

Appellant contends that this Court's proportionality review process violates his constitutional rights to due process and freedom from cruel and unusual punishment. Appellant asserts that this Court's proportionality review process violates his due process rights because he received inadequate notice of the Court's procedure and he lacks an adequate opportunity to be heard, citing *Harris v. Blodgett*, 853 F.Supp. 1239 (W.D.Wash.1994). This claim is once again rejected. *State v. Johnson*, 968 S.W.2d 123, 134–35 (Mo. banc 1998); *see also Zeitvogel v. Delo*, 84 F.3d 276, 284 (8th Cir.1996) (upholding this Court's proportionality review). Appellant also claims that the Court must compare his sentence with sentences imposed on similarly situated defendants who did not receive the death penalty in order to ensure that his death sentence is not disproportionate.

■ Proportionality review provided in section 565.035 is not required by the Constitution. *State v. Basile*, 942 S.W.2d 342 (Mo. banc 1997); *State v. Whitfield*, 939 S.W.2d 361, 372–373 (1997); *State v. Smulls*, 935 S.W.2d 9, 24 (Mo. banc 1996); *State v. Ramsey*, 864 S.W.2d 320, 328 (Mo. banc 1993), *cert. denied*, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994); *Weaver*, 912 S.W.2d at 522. Appellant's claim that it is unconstitutional to compare this case to other similar cases in which the death penalty was imposed is meritless. *Basile*, 942 S.W.2d at 361. Proportionality review is intended to provide a safeguard against the freakish and wanton application of the death penalty. *Chaney*, 967 S.W.2d at 59; *Ramsey*, 864 S.W.2d at 328. "The issue when determining the proportionality of a death sentence is not whether any similar case can be found in which the jury imposed a life sentence, but rather, whether the death sentence is excessive or disproportionate in light of 'similar cases' as a whole." *State v. Mallett*, 732 S.W.2d 527, 542 (Mo. banc 1987), *cert. denied*, 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987).

■ This Court has approved a sentence of death where the defendant committed murder at the direction of another or for monetary gain. *Basile*, 942 S.W.2d at 361;

*Tokar*, 918 S.W.2d at 769; *Copeland*, 928 S.W.2d at 842; *Ramsey*, 864 S.W.2d at 327; *State v. Wise*, 879 S.W.2d 494, 525 (Mo. banc 1994), *cert. denied*, 513 U.S. 1093, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995); *State v. Bannister*, 680 S.W.2d 141, 149 (Mo. banc 1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985); *State v. Blair*, 638 S.W.2d 739, 758–760 (Mo. banc 1982), *cert. denied*, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983). The death sentence here is not disproportionate.

■ Appellant further argues that his sentence is disproportionate to that of Martindale and Sanders. Sanders was sentenced to five years of probation for tampering, and Martindale was convicted of second degree murder and sentenced to fifteen years in prison. Appellant argues that his sentence is disproportionate to their sentences as well as disproportionate considering the crime and himself. Co-actors' plea agreements and convictions for crimes other than first degree murder are not to be considered in the proportionality review of a death sentence. *State v. Roll*, 942 S.W.2d 370, 378 (Mo. banc 1997).

## V. Conclusion

The judgments are affirmed.

PRICE, LIMBAUGH, COVINGTON, WHITE and HOLSTEIN, JJ., concur.

WOLFF, J., not participating because not a member of the Court when the cause was submitted.